United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 26, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————————————

No. 03-10902
No. 03-10903

————————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

TOMAS RICARDO FERNANDEZ,

                                        Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Northern District of Texas

————————————————

Before GARWOOD, WIENER and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

    In this consolidated appeal, Tomas Ricardo Fernandez appeals the denial of his motions to dismiss supervised release violations filed against him.  We affirm.

**Facts and Proceedings Below**

In 1997, Fernandez was convicted in the Western District of Texas (Western District) on two counts of importing marihuana. In addition to imprisonment, Fernandez was sentenced to two three-year terms of supervised release, which he began serving on August 1, 2000.

On March 27, 2003, Fernandez, while on supervised release, was arrested in the Northern District of Texas (Northern District) while transporting illegal aliens. When he was arrested, he had not requested or been granted permission to leave the Western District. On May 21, 2003, Fernandez pled guilty in the Northern District, Abilene Division, to a one count indictment charging him with transportation of illegal aliens and aiding and abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2. On July 10, 2003, the Western District transferred to the Northern District jurisdiction over Fernandez's supervised release, consenting that the transferee court may change the period of supervised release without further inquiry of the transferor court.

On July 22, 2003, the Northern District Court accepted the transfer of jurisdiction over his terms of supervised release from the Western District Court. Thereafter, and on or before August 11, 2003, there were filed in the Northern District, where Fernandez was being held, Petitions for Offender Under Supervised Release charging Fernandez with violating the conditions of his supervised release. Fernandez was sentenced in the Northern

2

District on the illegal alien transportation charge on August 14, 2003.

On August 15, 2003, Fernandez filed motions with the Northern District Court to dismiss the supervised release violations filed against him, arguing that the Northern District Court lacked jurisdiction to revoke his supervised release imposed by the Western District Court because the transfer of jurisdiction was not in accordance with 18 U.S.C. § 3605. On August 18, 2003, the United States Attorney for the Northern District filed in the Northern District formal motions to revoke Fernandez's supervised release on account of the violations of the conditions of his supervised release (leaving the Western District without permission and committing a crime—transporting illegal aliens—during his term of supervision). The Northern District Court denied Fernandez's motions on August 25, 2003.

On August 28, 2003, Fernandez pleaded true to the allegations in the motions to revoke his supervised release from the marihuana offenses, reserving the right to appeal the denial of his August 15, 2003 motions to dismiss. The Northern District Court then revoked his supervised release and imposed a sentence for the violation of each supervised release (ten months and twelve months imprisonment), those sentences to run consecutive to each other and to the illegal alien transportation sentence. Fernandez timely appealed the denial of his motions to dismiss in both cases, and the appeals were later consolidated.

## Discussion

The relevant statute is 18 U.S.C. § 3605:

> "A court, after imposing a sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is permitted to proceed, with the concurrence of such court." *Id.*

Section 3605 "gives a court discretion to order a transfer, but conditions transfer upon the acceptance of jurisdiction by the court to which the transfer is made, and upon selection of a district to which the probationer was required or permitted to proceed." *United States v. Ohler*, 22 F.3d 857, 858–59 (9th Cir. 1994). Fernandez's supervised release did not require him to proceed to the Northern District. In fact, we assume that it expressly prohibited him from leaving the Western District without the permission of the court or probation officer. See U.S.S.G. § 5D1.3(c)(1).[1] Thus, validity of the jurisdictional transfer depends entirely on whether Fernandez was nevertheless permitted to proceed to the Northern District.

Fernandez argues that the transfer was invalid and, therefore, that the Northern District Court lacked jurisdiction to revoke his supervised release or to impose any sentence of imprisonment on him for the violation of his supervised release. We reject Fernandez's

---

[1] No copy of either supervised release order is included in the record before us. The parties do not dispute that neither supervised release order required Fernandez to proceed to the Northern District and that each prohibited him from leaving the Western District without the permission of the court or probation officer.

4

argument and hold that the transfer by the Western District Court of jurisdiction over Fernandez's supervised release, which was agreed to by the Northern District Court, was proper and, therefore, that the Northern District Court did have jurisdiction to revoke Fernandez's supervised release.

## I. Standard of Review

We review the district court's legal conclusions regarding jurisdiction *de novo*. *United States v. Bustos-Useche*, 273 F.3d 622, 626–27 (5th Cir. 2001).

## II. Statutory Language: "Is Permitted to Proceed"

Section 3605 states that "[a] court . . . may transfer jurisdiction over a . . . person on supervised release to the district court for any other district to which the person . . . *is permitted to proceed*, with the concurrence of such court." § 3605 (emphasis added). Fernandez argues that the word "permitted" implies that before a district court may transfer jurisdiction, the releasee must first *request* permission to proceed to the transferee district. It is undisputed that Fernandez never requested permission from the Western District or its probation officer to proceed to the Northern District.

We disagree with Fernandez's reading of the statute. The plain language of section 3605 does not require that the releasee first request permission to proceed to the transferee district before the district court may exercise its discretion to transfer

5

jurisdiction. Permission to do a certain act may be granted even though no request for such permission has been sought.[2] There is no language in the statute suggesting that the permission to proceed to the transferee district must come only following a releasee's request.

Further, while the statute clearly indicates that it is the *district court* that has the discretion to *transfer jurisdiction*, the statute, by stating "is permitted to proceed" in the passive voice, does not describe who, or what, may permit the releasee to proceed to another district. In this light, once Fernandez was arrested and charged in the Northern District for transporting illegal aliens, he was permitted *by law* to remain in the Northern District while held there on those charges, even though he had gone there in violation of his supervised release. Indeed, for purposes of his illegal alien transportation case, Fernandez was *required by law* to be in the Northern District: "[T]he government must prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18. Moreover, once the Western District Court initiated the transfer of jurisdiction over Fernandez's supervised release, it effectively permitted him to remain in the Northern District. These permissions to remain in

---

[2] "Permit" is defined as "[t]o suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." BLACK'S LAW DICTIONARY 1140 (6th Ed. 1990). While this definition certainly contemplates that permission may be given in response to a request, it does not limit "permit" only to situations in which a request has first been made.

6

the Northern District, granted by law and by the Western District Court, were sufficient to allow the Western District Court to initiate the transfer of jurisdiction—even though Fernandez did not request permission to be proceed to the Northern District and was originally there in violation of his supervised release.[3] Therefore, the transfer of jurisdiction over Fernandez's supervised release was proper.

## III. Legislative History

Fernandez further contends that the legislative history of section 3605 is consistent with his reading of the statute. Although we believe that the plain language of section 3605 does not support Fernandez's reading, we look to the legislative history to be sure there is not a "a clear contrary legislative intention." *United States v. Scrimgeour*, 636 F.2d 1019, 1022–23 (5th Cir. 1981) ("A statute should ordinarily be interpreted according to its plain

---

[3] Fernandez contends that the government should not now be able to argue that the Western District Court granted him permission to be in the Northern District when the government argued below that by being present in the Northern District on March 27, 2003 (when he was arrested there while transporting illegal aliens) he had violated his supervised release because he did not then have permission to leave the Western District. Fernandez's argument is inapposite. There is a difference between Fernandez not having permission to leave the Western District and him being permitted, by law or by the Western District Court, to remain in the Northern District once he was arrested and held there on a charge independent of his having violated his supervised release by then being outside of the Western District without permission. The later permission to remain in the Northern District is irrelevant to whether Fernandez had initially violated his supervised release by his earlier leaving the Western District without permission.

7

language, unless a clear contrary legislative intention is shown."). Having analyzed the legislative history, we see no indication that Congress intended to require that a releasee first request permission to proceed to another district before the transferor court may transfer jurisdiction over the releasee.

Section 3605, enacted in 1984, was derived from 18 U.S.C. § 3653 (repealed 1984). Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, § 212(a)(2), 98 Stat. 2003; S. REP. NO. 98-225, at 132 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3315. Section 3653 covered the transfer of jurisdiction over probationers:

> "Whenever during the period of his probation, a probationer . . . goes from the district in which he is being supervised to another district, jurisdiction over him may be transferred, in the discretion of the court, from the court for the district from which he goes to the court for the other district, with the concurrence of the latter court. Thereupon the court for the district to which jurisdiction is transferred shall have all power with respect to the probationer that was previously possessed by the court for the district from which the transfer is made, except that the period of probation shall not be changed without the consent of the sentencing court. This process under the same conditions may be repeated whenever during the period of his probation the probationer goes from the district in which he is being supervised to another district." § 3653 (repealed 1984).

With the enactment of section 3605, and the repeal of section 3653, Congress intended to accomplish three goals. First, section 3605 expanded the former law to cover supervised releasees, newly

created in 1984.[4]  S. REP. NO. 98-225, at 132.  Second, section 3605 provided that a district court may transfer jurisdiction over the supervised releasee[5] "either as a condition of . . . supervised release or with the permission of the court," *id.*,[6] while section 3653 merely provided that jurisdiction could be transferred, in the discretion of the court, when the probationer "goes from the district in which he is being supervised to another district."  § 3653 (repealed 1984).  Third, section 3605 expanded the power of the transferee court over the supervised offender.  While under section 3653 "the court to which jurisdiction was transferred could not change the period of probation without consent of the sentencing court," section 3605 was intended to permit the transferee court "to exercise all the powers over the . . . releasee that are permitted" by the statutes dealing with supervised releasees.  S. REP. NO. 98-225, at 132.  The Senate Committee on the Judiciary believed that it was "unnecessary to

---

[4] In 1984, Congress enacted 18 U.S.C. § 3583, creating supervised release. Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, § 212(a)(2), 98 Stat. 1999.

[5] Even though § 3605 applies equally to probationers and supervised releasees, as this case involves only a supervised releasee, we refer to the section only in terms of supervised releasees.  Further, although § 3653 did not apply to supervised releasees—since they were not created until § 3653 was repealed—because § 3605 treats probationers and supervised releasees alike, we analyze the differences between former § 3653 and § 3605 as if § 3653 would have applied to supervised releases had they existed at that time.

[6] Allowing the district court to transfer jurisdiction when made a condition of the supervised release was to "provide the judge with an alternative to a term of imprisonment in the situation where that would otherwise be the only alternative to returning the defendant to an environment in which there would be an unacceptable risk that he might commit another offense."  S. REP. NO. 98-225, at 132.

retain the sentencing court's restriction since the new court will be in a better position to know whether a change" in the term of the supervised release is justified.  *Id.*  This expansion of the transferee court's power was to "simplify[] sentencing on new charges, by permitting the transfer of jurisdiction over the . . . release[e] to the district in which the new charges have been filed so that the sentencing judge may adjust the term of . . . supervised release as needed to serve the purpose of sentencing on the new charge."  *Id.* at 132–33.

The legislative history of section 3605 does not indicate that Congress intended that the district court may transfer jurisdiction over the releasee "to the district court for any other district to which the person . . . is permitted to proceed" only when the releasee has requested the permission to proceed to that district. § 3605.  Section 3653 would already have allowed a district court to transfer jurisdiction, *in its discretion*, to the court of a district where the releasee had gone, provided the transferee court concurred, without having to first see if the releasee had requested the permission to go to that district.

Further, Congress clearly intended to expand, not limit, the ability of the transferor court to transfer jurisdiction and of the transferee court to take full jurisdiction from the transferor court.  The reference to "simplifying sentencing on new charges[] by permitting the transfer of jurisdiction over the . . . releasee

10

to the district in which the new charges have been filed," S. REP. No. 98-225, at 132, directly relates to the situation before us: Congress intended to facilitate the sentencing on the new charges that have been filed in the potential transferee district (Fernandez's charges in the Northern District) by permitting the transfer of jurisdiction (from the Western District) and by giving the transferee district "all the powers" over the releasee that the original district court had.

Fernandez attempts to argue that the "sentencing on new charges" language in the legislative history to section 3605 does not prove the government's point. He contends that Congress intended only that *after* a valid transfer of jurisdiction has taken place, the defendant's *subsequent* commission of a crime in the transferee district would allow the transferee court to address the original supervised release along with the sentence for the new crime. Fernandez further asserts that neither the statute nor the legislative history allows for the transfer of jurisdiction to be predicated upon the commission of a new crime in the potential transferee district.

We do not agree with Fernandez. The legislative history clearly speaks of new charges that "*have been filed*" *in* another district *before* the transfer of jurisdiction to that district, not after, as Fernandez believes:

> "[T]he change should result in simplifying sentencing on
> new charges, by permitting the transfer of jurisdiction

11

over the . . . release[e] to the district in which the new charges *have been filed* so that the sentencing judge may adjust the term of . . . supervised release as needed to serve the purpose of sentencing on the new charge." S. REP. NO. 98-225, at 132–33 (emphasis added).

This is not to say that the statute allows a transfer of jurisdiction to be predicated on the commission of a new offense. The discretion to initiate a transfer is predicated upon the releasee having permission to proceed to the transferee district, as set out in section 3605, and this permission may be granted—by law or by the transferor court allowing the releasee to remain in the transferee district—because of new charges filed *in* the potential transferee district. The legislative history clearly indicates that the statute allows the transferor court, with the concurrence of the transferee court, the discretion to transfer jurisdiction *after* charges have been filed against the releasee for a new offense committed in the potential transferee district before any transfer of jurisdiction.[7]

Fernandez also relies on 18 U.S.C. § 3606, and its legislative history, to support his reading of the "new charges" language. Fernandez asserts that, absent a transfer of jurisdiction in accordance with section 3605 *prior* to new charges being filed in

_____

[7] The result in this case, and our interpretation of the "new charges" language in the legislative history to § 3605, is consistent with the view of the Sentencing Commission. Regarding criminal conduct that constitutes a violation of a supervised release, and related revocations, the Sentencing Commission has stated that "the court with jurisdiction over the criminal conduct leading to revocation [of probation or supervised release] is the more appropriate body to impose punishment for that new criminal conduct." U.S.S.G. Ch. 7 Pt. A (introduction 3(b)). Although the Sentencing Commission's position is not binding on us, it does support our reading of § 3605.

12

another district, section 3606 indicates that Congress intended to require the return of an offending releasee to the original sentencing district. Section 3606 provides that

> "[i]f there is probable cause to believe that . . . a person on supervised release *has violated a condition of his . . . release*, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. . . . The court having supervision of the . . . releasee . . . may issue a warrant for the arrest of a . . . releasee for *violation of a condition of release*, and a probation officer or United States marshal may execute the warrant in the district in which the warrant was issued or in any district in which the probationer or releasee is found." § 3606 (emphasis added).

Fernandez's reliance on section 3606 is misplaced. Section 3606 expressly applies to releasees who are arrested *because they have violated a condition of their release* and does not speak of "new charges" that "have been filed" as does the legislative history to section 3605. Fernandez would have us read section 3606 as requiring that a releasee be returned to the court having jurisdiction over his supervised release whenever the releasee is arrested in another district for *any reason*. We do not agree with this reading. Before any transfer of jurisdiction, Fernandez was arrested, indicted, and pled guilty in the Northern District for the transportation of illegal aliens in the Northern District and not for violating his Western District supervised release. Therefore, section 3605, not 3606, applies; and the legislative history to section 3605 indicates that the intent was to permit the transfer of jurisdiction "to the district in which the new charges

13

*have been filed*," S. REP. NO. 98-225, at 132 (emphasis added), not, as Fernandez contends, "are filed *after* a proper transfer."

## Conclusion

Based on the foregoing, we AFFIRM.[8]

---

[8] At oral argument, it was suggested that the transfer of jurisdiction over Fernandez's supervised released may have required a hearing under Rule 32.1(c), which requires that "[b]efore modifying the conditions of . . . supervised release, the court must hold a hearing." FED. R. CRIM. P. 32.1(c)(1). Because the location of supervised release jurisdiction is not a *condition* of the supervised release, the transfer of jurisdiction itself did not require a hearing. *See Ohler*, 22 F.3d at 858 ("Similarly, Rule 32.1(b) [, the predecessor to the current Rule 32.1(c),] applies only when 'terms or conditions of probation or supervised release' are modified. The location of probation jurisdiction is not such a term or condition.").

Even if we were to consider that the transfer of jurisdiction from the Western District to the Northern District effectively modified a condition of Fernandez's supervised release merely by permitting him to remain in the Northern District (and we believe it did not constitute a modification of conditions), nevertheless any such "modification" of where Fernandez could be was in no way prejudicial to Fernandez (nor did it extend the term of his supervised release or impose any further requirement or restriction on Fernandez, *see* FED. R. CRIM. P. 32.1(c)(2)(B)), and it merely confirmed what was already required by law—that Fernandez remain in the Northern District for the prosecution of his transportation of illegal aliens offense. *See* FED. R. CRIM. P. 18. Therefore, the failure to hold a hearing prior to transferring jurisdiction over Fernandez's supervised release resulted in no prejudice to Fernandez and no error. In any event, in his motions to dismiss filed with the Northern District Court and in his briefs before this court, Fernandez has not argued that the Northern District Court lacked jurisdiction because the transfer was improper on account of the failure to hold a hearing.

14