# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 7, 2022

Lyle W. Cayce
Clerk

No. 21-50057

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JORDAN JERICHO BAUTISTA-GUNTER,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CR-176-1

Before JONES, HIGGINSON, and DUNCAN, *Circuit Judges*.

STEPHEN H. HIGGINSON, *Circuit Judge*:

In 2016, Jordan Jericho Bautista-Gunter ("Bautista-Gunter") pleaded guilty to possession of a firearm by a prohibited person and carrying a weapon on an aircraft.[1]  Bautista-Gunter was sentenced to 65 months of imprisonment and three years of supervised release.  After the commencement of his term of supervised release—during which time he was

---

[1] *See* 18 U.S.C. § 922(g)(1) and 49 U.S.C. § 46505.

No. 21-50057

prohibited from "engag[ing] in the occupation of . . . a law enforcement officer of any kind"—Bautista-Gunter filed the present "Motion to Set Hearing on Conditions of Supervised Release." The district court construed his motion as a request for modification of the law-enforcement condition and denied it,[2] reiterating that the prohibition against such employment was warranted.[3] Bautista-Gunter appeals. We affirm.

## I.

## A.

Bautista-Gunter has a lengthy history of violating the law, and, as his own lawyer acknowledged, many of his violations reflect a longstanding "obsession with police work."[4] In 2009, Bautista-Gunter pleaded guilty to charges of reckless endangerment, and in 2010, Bautista-Gunter was convicted of concealed possession of a dangerous weapon. As a result of having been convicted of crimes for which the maximum punishment exceeded one year in prison, Bautista-Gunter was considered a "prohibited person" for the purposes of 18 U.S.C. §922(g)(1).

Prior to his arrest in 2016, Bautista-Gunter was self-employed as the owner of Public Safety Partnerships, a business offering maintenance and personnel management to local county jails. In late 2015, Bautista-Gunter was granted a contract with the Frio County Jail to serve as the jail administrator. Bautista-Gunter led officials to believe that he was a

---

[2] *See* 18 U.S.C. § 3583(e)(2).

[3] *See* 18 U.S.C. §§ 3553(a) and 3563(b)(5).

[4] Bautista-Gunter, in his 2016 plea agreement, admitted, *inter alia*, the facts discussed herein.

commissioned law enforcement officer, despite the fact that he was not a sworn officer and was not authorized to carry a weapon.

In 2016, while acting as jail administrator, Bautista-Gunter—wearing a green uniform with a gold badge and a full duty belt—detained a man at his home, alleging the individual had violated bond conditions. Bautista-Gunter demanded, without authority, a urine sample from the individual, handcuffed him, and requested police backup "to help transport [his] prisoner." Upon arrival, police officers determined that Bautista-Gunter was not licensed to carry a firearm. When police officers subsequently determined that he was not a law enforcement officer, they seized from him a firearm and other law-enforcement tactical gear.

According to security documents maintained by the U.S. Department of Homeland Security and the Transportation Security Administration, on at least twenty-one occasions, Bautista-Gunter unlawfully requested authorization to fly armed, for the purpose of transporting prisoners. Between March 9, 2015, and January 14, 2016, he traveled on nine occasions armed with a weapon on a commercial airline, across several states, under the guise of serving as an armed law enforcement officer. On one occasion, Bautista-Gunter told a prisoner he would "shoot to kill," in the event the prisoner attempted to escape. In another instance, Bautista-Gunter left his loaded handgun on the toilet paper roll in the men's restroom. Airport authorities tracked him down to return the gun to him.

On February 2, 2016, Bautista-Gunter was arrested for impersonating a police officer, in connection with his commercial air travel. On May 11, 2016, he pled guilty to two counts of a four-count indictment: Count 1 charged Prohibited Person in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2) and Count 4 charged Carry

No. 21-50057

Weapon on Aircraft, in violation of 49 U.S.C. § 46505, 49 U.S.C. § 46505(c).

B.

As part of his plea agreement, Bautista-Gunter waived his right to appeal his convictions and sentences and to challenge his sentences in any postconviction proceedings. The district court sentenced Bautista-Gunter within the guidelines range to 65 months of imprisonment and three years of supervised release. The district court also imposed the following condition of supervised release (the "law-enforcement condition"): "The defendant shall not engage in the occupation of or pretend to engage in the occupation of a law enforcement officer of any kind."[5] The Bureau of Prisons ("BOP") website indicates that Bautista-Gunter was released on October 30, 2020.[6]

Importantly, on February 2, 2018, this Court affirmed Bautista-Gunter's appeal of his convictions and sentences. *See United States v. Bautista-Gunter*, 710 F. App'x 636, 637 (5th Cir. 2018).

Thereafter, on December 28, 2020, Bautista-Gunter filed his *pro se* pleading captioned "Motion to Set Hearing on Conditions of Supervised Release." He alleged that, while in community custody under BOP supervision in June 2020, he secured employment as an unarmed security guard. However, after his term of supervised release began, Bautista-Gunter

---

[5] Bautista-Gunter's own lawyer suggested that the sentencing court should limit his involvement with the law enforcement field as a condition of his release. At the sentencing hearing, Bautista-Gunter's attorney stated, "I think the Court will probably, as part of its sentence, include conditions of supervised release to try to keep him –- and *I would hope that the Court would* . . . keep him away from fainting (sic.) any kind of law –- law enforcement related employment or possessing law enforcement training."

[6] *See Inmate Locator*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Dec. 13, 2021). Bautista-Gunter currently has under two years of the supervised release term remaining.

No. 21-50057

alleged that his probation officer informed him that such employment would violate the law-enforcement condition. Citing definitions of "peace officer" and "qualified law enforcement officer" under Texas and federal law, respectively, Bautista-Gunter argued that employment as a security guard would not fall within the conduct prohibited by the law-enforcement condition and that, before his conditions of supervised release could be modified to prohibit such employment, the district court would be required to hold a hearing under Federal Rule of Criminal Procedure 32.1(c)(1). He requested that the district court either issue a written order authorizing his employment or schedule a modification hearing and appoint him counsel. [7]

In its order denying relief, the district court held that a commonsense interpretation of the law-enforcement condition, as written and imposed, prohibited the employment at issue. "Because the Court [found] that the probation officer simply enforced the subject condition as written (without modification), there [was] no need for a [Rule 32.1(c)] hearing."

On appeal, Bautista-Gunter argues that, by prohibiting his employment as a security guard, the district court impermissibly modified the law-enforcement condition without first holding a hearing as required by Rule 32.1(c)(1). The Government responds that this court reviews for abuse of discretion whether the district court erred by denying the hearing, and it contends that no such abuse occurred since the district court did not modify the condition, and, therefore, no hearing was required.

---

[7] Although the district court instructed the Government to respond, the Government failed to do so. The Government attributes this failure to a miscommunication caused by the retirement of the prosecutor who was handling Bautista-Gunter's 28 U.S.C. § 2255 motion.

II.

At the outset, we note this Court has not yet confirmed whether the abuse-of-discretion or plain-error standard of review applies when a district court rules pursuant to Rule 32.1(c)(1).[8]  *See United States v. Doyle*, 865 F.3d 214—15 & n.1 (5th Cir. 2017) (Refusing to "decide whether… [this type of claim] should be reviewed for plain error because [Petitioner was] not entitled to relief even under the less deferential abuse of discretion standard."); *United States v. Blank*, 854 F. App'x 559, 561 (5th Cir. 2021) (Noting "an ambiguity in this court's caselaw as to the appropriate standard of review—abuse of discretion or plain error—where, as here, a defendant did not raise an objection to the supervised release conditions at his original sentencing.").  We do not resolve the issue because Bautista-Gunter's argument lacks merit under either standard of review.

Federal Rule of Criminal Procedure 32.1(c)(1) provides: "Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." However, this Court has held that when a district court "merely confirm[s] what was already required by law" with regard to a supervised release condition, "the failure to hold a hearing . . . result[s] in no prejudice to [the defendant] and no error." *United States v. Fernandez*, 379 F.3d 270, 277 n.8 (5th Cir. 2004).  Citing *United States v. Paul*, 274 F.3d 155, 167 (5th Cir.

---

[8] At least two circuits have applied an abuse of discretion standard of review when examining the denial of a motion for modification of supervised release. *See United States v. Cordero*, 7 F.4th 1058, 1069 (11th Cir. 2021) ("We review the denial of a motion for modification of supervised release for abuse of discretion."); *United States v. Grant*, 715 F.3d 552, 556–57 (4th Cir. 2013) ("[W]e review the district court's decision whether to modify Grant's conditions of probation for abuse of discretion.").

2001), the district court determined that the law-enforcement condition should be afforded "a commonsense reading" in light of the nature of Bautista-Gunter's underlying offenses and his "history . . . of inflating his authority to enforce the law (while, in some instances, acting as a private 'guard' who was supposed to be unarmed)."

Indeed, this court has held, on several occasions, that "conditions of supervised release . . . should 'be read in a commonsense way.'" *United States v. Ellis*, 720 F.3d 220, 226 (5th Cir. 2013) (quoting *United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003)); *see also Paul*, 274 F.3d at 166–67; *United States v. Caravayo*, 809 F.3d 269, 275 (5th Cir. 2015) (holding that a court of appeals may affirm a condition of release "where the district court's reasons can be inferred after an examination of the record") (cleaned up).

Although the law-enforcement condition does not detail and list impermissible forms of law enforcement employment, a commonsense reading of the condition encompasses his proposed employment as a security guard, above all because the condition imposed at sentencing and unadjusted on direct appeal prohibits work in the "occupation" of "a law enforcement officer *of any kind*" (emphasis added). *See Paul*, 274 F.3d at 166–67. The condition at issue, and others like it, are imposed to protect the public, encourage defendant rehabilitation, and deter future criminal acts. *See* 18 U.S.C. §§ 3583(d)(1); 3553(a)(1)–(2*)*. In this case, the law enforcement condition was designed to protect the public—and, notably, Bautista-Gunter himself—from his "obsession with police work" and repeated pattern of feigning law enforcement prerogative and privileges. Permitting Bautista-Gunter to serve as a security guard would contradict the purpose of the release condition—namely, to keep him from "*any* kind of law enforcement related employment," to avoid triggering "his compulsive desire to be a law

No. 21-50057

enforcement officer"—by allowing him to once again "liv[e] in this fantasy world of police work."[9]

For these reasons, we agree with the district court's determination that Bautista-Gunter's sentence, and specifically the law enforcement supervised release condition, prohibits the employment in question. Consequently, no hearing to modify his conditions of release was required. *See United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003) (finding Rule 32.1(c) "does not compel the court to hold a hearing before refusing a request for modification.").

## III.

Anticipating this outcome, Bautista-Gunter alternatively contends that, if the district court correctly determined that the law-enforcement condition precludes his employment as a security guard, the condition is excessive. To the extent that Bautista-Gunter contests the correctness of an expressly imposed—even requested—original sentencing condition, such an argument would have been proper only on direct appeal, albeit subject both to plain error review and also, apparently, to the appeal waiver term he agreed to.

Even construed as a request to modify an excessively strict release condition, we affirm the district court's reiteration of its tailored and reasonable relationship to Bautista-Gunter's offenses of conviction. *See* 18 U.S.C. § 3583(d). Quoting extensively from the factual basis contained in Bautista-Gunter's plea agreement, the district court highlighted that the law

---

[9] In Bautista-Gunter's "Motion to Set Hearing on Conditions of Supervised Release," he alleges that he was granted a license by the Texas Department of Public Safety to serve as an unarmed security guard. However, he provides no further details about either his employment or any approved, official license. The record, instead, reflects that he was denied an application for a Private Security License in April 2014.

enforcement prohibition bears a direct relationship to the nature and circumstances of his offenses and his history and characteristics. *See* 18 U.S.C. §§ 3553(a)(1), 3563(b)(5). Furthermore, the district court concluded that the law-enforcement prohibition resulted in a deprivation of liberty that was reasonably necessary "to protect the public from further crimes of the defendant." *See* 18 U.S.C. §§ 553(a)(2)(C), 3583(d)(2).

We agree with the district court's assessment.

## IV.

For the foregoing reasons, the district court's denial of Bautista-Gunter's "Motion to Set Hearing on Conditions of Supervised Release" is AFFIRMED.