# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2902

_____

United States of America

*Plaintiff - Appellee*

v.

Ricky Isiah Sherwood

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 21, 2016
Filed: March 6, 2017

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ricky Sherwood sexually assaulted a fellow high school student on the Kadena Air Base in Okinawa, Japan, where the families of Sherwood and the victim resided. Sherwood was indicted in the District of Minnesota, which had jurisdiction under the Military Extraterritorial Jurisdiction Act, 18 U.S.C. §§ 3261 *et seq*, and pleaded guilty to sexual abuse in violation of 18 U.S.C. §§ 2242(2), 2246(2)(A), and 3261(a)(1). At sentencing, the district court varied downward from Sherwood's advisory guidelines

range and sentenced him to 60 months in prison followed by the minimum supervised release term of five years. See 18 U.S.C. § 3583(k). Sherwood appeals two special conditions of supervised release that require him to provide any personal financial information the Probation Office requests and to obtain Probation Office approval before incurring new credit charges or opening additional lines of credit. Reviewing these special conditions for abuse of discretion, we reverse.

## I. Background.

On the afternoon of the assault, Sherwood invited the victim and other classmates to his home and provided everyone with alcohol. At some point, Sherwood and the victim went upstairs and began having sex. After the victim became so intoxicated she could not refuse to participate, Sherwood continued their sexual activity for more than one hour, filming what was now an assault. The videos show Sherwood laughing as he continued the assault with a victim who was unable to hold herself in a seated position or to speak clearly. After Sherwood left to work his shift as a base lifeguard, his friends carried the victim from the house and left her on a public park bench, where a school counselor found her wearing Sherwood's clothes and still severely intoxicated.

After Sherwood pleaded guilty, the parties submitted extensive pre-sentencing position papers. The government argued that Sherwood video-recorded his sexual assault and should therefore be sentenced within the guidelines range resulting from a cross reference to enhancements for producing child pornography. Sherwood argued the child pornography guidelines should not apply to his offense, and he should receive a downward variance to 24 months in prison because of his youth, his status as a first offender, and the fact that his guardians -- a maternal aunt and uncle -- had relocated to Minnesota to assist Sherwood's rehabilitation. The Presentence Investigation Report and the government did not address whether special conditions

of supervised release should be imposed, and the district court gave no advance notice of what conditions would be considered. Sherwood's uncle, a psychologist, and the victim's parents testified or spoke at the lengthy sentencing hearing.

At the end of the hearing, the district court described Sherwood's crime as "absolutely horrible," "disgusting," and "infuriating," but granted a substantial downward variance because "I don't see this as a child pornography case." The court explained that it was imposing a "serious sentence" of 60 months in federal custody, in part because, prior to Sherwood pleading guilty, the court had revoked his pretrial release to a halfway house after he refused to complete job-search duties and attend school, committed numerous infractions of halfway house rules and policies, and attempted to dispose of synthetic marijuana for a fellow resident. The court noted that Sherwood's violations at the halfway house revealed that he was still a "stupid kid doing stupid kid stuff instead of . . . trying to rehabilitate and get what I think is a very severe alcohol issue under control."

The district court also imposed a five-year term of supervised release, subject to applicable mandatory and standard conditions and eleven special conditions of supervised release. See U.S.S.G. § 5D1.3. At issue on appeal are the last two special conditions appearing in the court's written judgment:

j.      The defendant shall provide the probation officer access to any requested financial information, including credit reports, credit card bills, bank statements, and telephone bills.

k.      The defendant shall be prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

After the court read the supervised release conditions, defense counsel stated: "Your Honor, I would ask that the Court note an objection to the supervision conditions, particularly the financial ones that you ordered." The court responded, "All right. I think under the circumstances those are appropriate. . . . Those will be in place until I think Mr. Sherwood gets himself established as an adult."

## II. Discussion.

"Sentencing judges have discretion to impose special conditions of supervised release so long as the conditions are reasonably related to the sentencing factors enumerated in 18 U.S.C. § 3553(a), involve no greater deprivation of liberty than is reasonably necessary, and are consistent with the Sentencing Commission's pertinent policy statements." United States v. Cooper, 171 F.3d 582, 585 (8th Cir. 1999). A special condition must be reasonably related to "the nature and circumstances of the offense of conviction, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs." United States v. Deatherage, 682 F.3d 755, 758 (8th Cir. 2012) (quotation omitted); see 18 U.S.C. § 3583(d). A special condition need not be related to all these factors; "instead, the factors are weighed independently." United States v. Hart, 829 F.3d 606, 609 (8th Cir. 2016). On appeal, Sherwood argues the challenged financial conditions are totally unrelated to his offense of conviction and have no reasonable relation to *any* of the applicable § 3553(a) factors.

**A.** The government argues that we should review Sherwood's challenge to the financial conditions for plain error. "When a defendant properly objects at sentencing, we review special conditions for abuse of discretion." Deatherage, 682 F.3d at 757; see Fed. R. Crim. P. 51(b). Though Sherwood objected at sentencing, the government argues his objection was improper because it did not specifically

identify the challenged financial restrictions and describe the grounds for his objection, like the general objection in United States v. Simons, 614 F.3d 475, 479 (8th Cir. 2010). We disagree.

The district court gave Sherwood no notice that it was considering financial conditions of supervised release that are unrelated to his sexual misconduct offense. Advance notice of supervised release conditions "fits into the category of recommended 'best practice' rather than mandatory requirement." United States v. Kappes, 782 F.3d 828, 842 (7th Cir. 2015). Thus, lack of notice will not excuse a defendant's total failure to object to special conditions at sentencing. See United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003). But lack of notice of an unexpected condition "may make it difficult for the defendant to mount an effective challenge to it." United States v. Bryant, 754 F.3d 443, 444 (7th Cir. 2014). Therefore, as we did in reviewing a nearly identical objection to financial conditions in Hart, 829 F.3d at 608 & n.3, we reject the government's plain error contention and will review the special conditions at issue for abuse of discretion. See also United States v. Camp, 410 F.3d 1042, 1044-45 (8th Cir. 2005).

**B.** Sections 5D1.3(d)(2) and (3) of the advisory guidelines directly address the issue of whether the financial restrictions at issue are appropriate special conditions of supervised release:

(d) The following "special" conditions of supervised release are recommended in the circumstances described and, in addition, may otherwise be appropriate in particular cases:

\* \* \* \* \*

(2)  DEBT OBLIGATIONS

> If an installment schedule of payment of restitution or a fine is imposed -- a condition prohibiting the defendant from incurring new credit charges or opening additional lines of credit without approval of the probation officer unless the defendant is in compliance with the payment schedule.

(3)  ACCESS TO FINANCIAL INFORMATION

> If the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine -- a condition requiring the defendant to provide the probation officer access to any requested financial information.

We have affirmed sentences imposing these financial conditions in a number of cases.  In United States v. Behler, 187 F.3d 772, 780 (8th Cir. 1999), we upheld imposing the § 5D1.3(d)(3) condition on a defendant convicted of drug trafficking because "money and greed were at the heart of Behler's drug distribution offenses and . . . monitoring Behler's financial situation would aid in detecting any return to his former lifestyle."  In United States v. Ervasti, 201 F.3d 1029, 1046-47 (8th Cir. 2000), we concluded that the special condition in § 5D1.3(d)(2) was reasonable for a defendant convicted of fraud and tax offenses who was ordered to pay $5.7 million in restitution.  In United States v. Weiss, 328 F.3d 414, 417-18 (8th Cir. 2003), we upheld imposing that condition on a defendant convicted of burglary and assault because he was ordered to pay $3,740 in restitution but had "a documented history of unemployment and . . . no assets."  In Camp, 410 F.3d at 1046, we upheld imposing the § 5D1.3(d)(3) condition on a defendant convicted of a firearm offense who had a history of not paying child support; we explained this condition "is not a prohibition on behavior, but rather a monitoring device that is to be used by the probation office to complement the conditions that he follow state court child support orders and remain employed."  In Hart, 829 F.3d at 609, we upheld imposing both

financial conditions on a defendant convicted of assaulting a family member because that offense and a prior offense "related to money," defendant owed a debt arising out of a prior offense, and a special condition ordered him to contribute to the cost of mandated drug treatment. These decisions reflect the basic principle that the district court has discretion "to tailor a condition to the needs of a particular case, consistent with § 5D1.3(b)." Ervasti, 201 F.3d at 1046.

**C.** Unlike the imposition of financial conditions in the above cases, the district court summarily imposed two financial conditions in this case, with no explanation and no advance notice, contrary to this court's well-established precedent:

> When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements. The district court may not impose a special condition on all those found guilty of a particular offense.

United States v. Wiedower, 634 F.3d 490, 493 (8th Cir. 2011) (citations and quotations omitted).

*First*, the financial conditions were totally unrelated to Sherwood's offense of conviction and the circumstances surrounding that offense. Money, greed, and debt simply had nothing to do with his horrific crime. Without question, a district court has discretion to impose a special condition not related to the offense of conviction, but the record must reflect an individualized inquiry establishing that the condition does not restrict defendant's liberty "more than is reasonably necessary to fulfill the sentencing goals." Camp, 410 F.3d at 1046.

*Second*, the Guidelines specifically recommend these two financial conditions when a sentence includes other provisions that are not part of Sherwood's sentence -- the defendant is not in compliance with a court-ordered installment schedule for paying restitution or a fine, § 5D1.3(d)(2); or the court has imposed an order of restitution, forfeiture, notice to victims, or a fine, § 5D1.3(d)(3). As Section 5D1.3(d) makes clear, the district court had discretion to impose tailored financial conditions that were appropriate to this case. But the operative provisions in special conditions j. and k. were inappropriately taken verbatim from the guideline provisions:

> -- Condition k. prohibits Sherwood from incurring *new* credit charges and opening *additional* lines of credit, when the record established that he has probably never had a credit card or a line of credit. Obviously, there was no attempt to tailor the condition to the needs of this case. Moreover, condition k. is a dramatically overbroad restriction on Sherwood's ability to lead a normal life. Read literally, it prohibits him from using a credit card, perhaps even his uncle's credit card, to buy an ice cream cone, without a probation officer's prior approval.

> -- Condition j. requires Sherwood to provide "any requested financial information," a hopelessly vague and overbroad term when no context is provided. See United States v. Thompson, 777 F.3d 368, 379-80 (7th Cir. 2015).

The inclusion of vague and inappropriate language borrowed from the Guidelines out of context and by rote does not reflect the individualized inquiry we require.

*Third*, the absence of advance notice that an unexpected special condition will be considered is particularly relevant "if the defendant could have offered something pertinent at sentencing." United States v. Scott, 316 F.3d 733, 734 (7th Cir. 2003).

Here, the sentencing record contained no information on the extent of Sherwood's prior financial experience. The district court simply assumed he had none and in effect assigned the probation officer to be Sherwood's financial guardian during supervised release. Yet Sherwood's uncle, his legal guardian, testified at the sentencing hearing. Had the issue been disclosed to counsel in advance, the uncle could have been questioned about the extent of Sherwood's prior financial experience, including his handling of any prior financial obligations, and the uncle's plans, if any, to guide Sherwood to appropriate financial responsibility during his period of supervised release. The record then would have been sufficient to ensure that any financial conditions imposed were reasonably related to sentencing and involved no greater deprivation of liberty than is reasonably necessary.

*Fourth*, the district court's only explanation for imposing special conditions j. and k. was that they "are appropriate [and] will be in place until I think Mr. Sherwood gets himself established as an adult." This explanation would apply to all juvenile federal offenders who lack financial experience and are placed on supervised release. While it is no doubt appropriate for a district court to consider the defendant's youth and immaturity in crafting special conditions of supervised release, to do so in this categorical manner violates the rule that any such inquiry "must take place on an individualized basis; a court may not impose a special condition on all those found guilty of a particular offense." United States v. Davis, 452 F.3d 991, 995 (8th Cir. 2006).

For the foregoing reasons, we conclude the district court abused its discretion in imposing supervised release special conditions j. and k. We modify the judgment to delete those conditions. As so modified, the judgment of the district court is affirmed.

COLLOTON, Circuit Judge, dissenting.

This court has upheld the imposition of the disputed special conditions of supervised release over the same objections raised by the court in this case. I therefore conclude that the district court did not abuse its discretion in fashioning special conditions for Ricky Sherwood and would affirm the judgment.

The court sets forth three leading objections to the financial conditions imposed by the district court—(1) the conditions were unrelated to the offense of conviction, (2) the conditions did not accompany an order of restitution, forfeiture, or fine, or non-compliance with a court-ordered installment schedule, *see* USSG § 5D1.3(d)(2), (3), and (3) the district court did not provide advance notice that it would impose the conditions. In *United States v. Camp*, 410 F.3d 1042 (8th Cir. 2005), however, we upheld the same conditions after acknowledging that they were imposed without notice, *id*. at 1044, where the defendant was not ordered to pay restitution or a fine, *id*. at 1046, and where the conditions were not reasonably related to the offense of conviction (in that case, unlawful possession of a firearm). *Id*. These factors did not establish an abuse of discretion, because a special condition need not be related to all of the statutory factors in 18 U.S.C. § 3583(d), financial conditions may be imposed in appropriate situations despite the absence of a fine or restitution order (Camp owed child support payments), and no advance notice is required so long as the defendant may object at the hearing. Sherwood had notice of the financial conditions before the sentencing hearing concluded, but he never requested an opportunity to augment the record with information about his supposed financial responsibility.

Sherwood committed a heinous sex offense as an eighteen-year-old high schooler and pleaded for a sentence that emphasized rehabilitation rather than retribution and incarceration. The district court imposed a term of imprisonment below the advisory guideline range and included special conditions of release that

-10-

were designed to facilitate rehabilitation. The record showed no experience of the defendant in managing finances: Sherwood was a dependent of his aunt and uncle, with no assets or liabilities and no history of filing an independent tax return. PSR ¶ 74. The district court reasonably determined that conditions to monitor Sherwood's financial situation complemented the condition that he contribute to the costs of substance abuse treatment. Concerns about potential overbreadth or hypothetical restrictions on purchasing ice cream cones do not justify striking the conditions, given the district court's "abundant opportunity to amend or ameliorate any unreasonable adverse impact" during the term of Sherwood's supervised release. *United States v. Hart*, 829 F.3d 606, 610 (8th Cir. 2016); *see United States v. Deatherage*, 682 F.3d 755, 765 (8th Cir. 2012).

The court worries that the financial conditions were imposed in a "categorical manner" rather than on an "individualized basis." At some point, however, "there must be a limit to the need for an individualized inquiry, because certain characteristics may justify corresponding conditions for virtually all offenders with such characteristics." *United States v. Springston*, 650 F.3d 1153, 1156 (8th Cir. 2011), *vacated on other grounds*, 132 S. Ct. 1905 (2012). We are left after this decision with a rule that these financial conditions are permissible for child-support deadbeats convicted of gun crimes, *see Camp*, 410 F.3d at 1046, but not for alcohol-fueled teenage sexual abusers with no financial experience who must contribute to the costs of substance abuse treatment. Seeing no reason to distinguish between these categories of defendants, I would affirm the judgment.

———————————————