# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1711
_____

United States of America

*Plaintiff - Appellee*

v.

The-Nimrod Sterling, also known as Nimrod Sanders

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 13, 2020
Filed: May 13, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

The-Nimrod Sterling began a two-year term of supervised release in December 2018 after completing a 57-month prison sentence for impersonating a foreign diplomat in violation of 18 U.S.C. § 915 and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In March 2019, the United States Probation Office petitioned the district court for modification of his sentence to add three special conditions of supervised release. Sterling appeals the grant of the petition

following a hearing at which Sterling represented himself with the help of standby counsel. We vacate one special condition and otherwise affirm.[1]

## I. Background

After a series of Arkansas convictions in the 1990's, Sterling's federal incarceration began with a 2002 conviction in the Northern District of Illinois for a bank robbery during which he threatened a bank clerk with a BB gun. The PSR for that offense recited that he robbed the bank to force a police officer to kill him. While detained, Sterling attempted to hang himself with his sock and repeated threats to kill himself. He was hospitalized for suicidal intent and diagnosed with several mental health disorders. A pretrial Federal Medical Evaluation concluded he had a history of depression but was competent to be tried. After serving that sentence, Sterling's supervised release was transferred to the Eastern District of Arkansas in February 2007. A competency evaluation concluded he was competent to proceed with post-release proceedings, but his supervised release was twice modified to include a directive to obtain mental health counseling. The term of supervised release expired in February 2012.

In October 2013, an Arkansas State Police officer stopped Sterling for speeding and observed large stickers reading "Diplomatic Immunity Do Not Detain," and "U.S. Republic of Conch Diplomat Do Not Detain." Sterling presented the officer a "U.S.

---

[1]Both parties assert, without supporting authority, that we have appellate jurisdiction under 28 U.S.C. § 1291 because the district court's order is a "final decision." Despite the obvious non-final nature of a mid-term modification of supervised release conditions, compared, for example, to an order revoking supervised release, we are satisfied that an order modifying supervised release conditions is, in substance, the entry of a new appealable sentence. Cf. United States v. Jones, 846 F.3d 366, 369 (D.C. Cir. 2017); United States v. Lonjose, 663 F.3d 1292, 1294-95 (10th Cir. 2011); United States v. Horn, 76 F. App'x 747, 748-49 (8th Cir. 2003).

Conch Republic, Diplomatic Identification Card." The officer released him with a warning, but sent a photograph of the card to the U.S. Department of State, which determined, not surprisingly, that Sterling's diplomatic credentials were fraudulent.[2]

In September 2014, two students told Pine Bluff police that Sterling emerged from a limousine and pointed a long gun at them from his driveway across the street from Pine Bluff High School. Investigating, police discovered a hidden firearm rack in the passenger seat of the limousine, and a warrant search of the residence uncovered a .12-gauge shotgun, ammunition, and a host of materials identifying Sterling as an ambassador with diplomatic immunity.

Charged with impersonating a diplomat and unlawful possession of a firearm, Sterling was determined to be competent to stand trial. District Judge Billy Roy Wilson then granted Sterling's motion to represent himself, but appointed Assistant Federal Public Defender Nicole Lybrand to serve as standby counsel. At trial and sentencing, Lybrand conducted voir dire, identified objections on Sterling's behalf, opposed a sentencing guidelines enhancement, and argued for a reduced sentence.

Following commencement of supervised release in December 2018, relations between Sterling and Probation Officer Jerome Sanders quickly soured. In late February 2019, Sterling filed motions to proceed *pro se* at any hearings regarding modification or revocation, and "To Eradicate the Illegal Search & Abuse of Power by Officer Sanders." On March 11, the Probation Office petitioned the court for modification to add three special conditions of supervised release: that Sterling (i) "participate in a mental health treatment program under the guidance and supervision of the probation office"; (ii) submit his "person, property, house, residence, vehicle, papers, computers [and] electronic communications or data storage devices" to a

---

[2]The Conch Republic is a tourism attraction invented by the city of Key West, Florida. See https://www.conchrepublic.com/.

-3-

search conducted at a reasonable time and in a reasonable manner by a probation officer having reasonable suspicion that a supervised release condition has been violated and the place to be searched contains evidence of the violation; and (iii) provide the probation officer with access to "any requested financial information (including unexpected financial gains)" and "authorize the release of any financial information" to the Probation Office and the U.S. Attorney's Office.

Judge Wilson held a hearing on this petition on March 26, 2019. Sterling appeared *pro se* with AFPD Lybrand as standby counsel. At the outset, the prosecutor stated, "On the first modification, the United States just requests that [Sterling] be assessed, go through a mental health assessment." Probation Officer Sanders was called to testify in support of the three new conditions. Regarding the first modification, Sanders described at length mental health evaluations and treatment Sterling received between 2002 and 2009. He testified it is "typical with offenders who have a history of mental health to have an assessment when they begin supervision," but that had not been made a condition of Sterling's supervision. Asked to relate his personal observations of Sterling, Sanders testified that when he visited Sterling's residence, he "conduced himself as sort of like a king," claiming that his paintings are "worth millions of dollars" when clearly they are not; claiming he has letters from Queen Elizabeth that clearly are not; and saying "he was going to give [one] painting to President Trump afer he pardons him as an agreement that they had already made." In addition, Sterling "dresses or appears to be very lavish and talks about a very lavish lifestyle, but the living conditions do[] not support that as well."

Sterling cross-examined Officer Sanders. Regarding the first modification, Sterling questioned whether his prior mental health issues had extended into the 57-month imprisonment for this offense, which Sanders more or less conceded, and asserted that Sanders's opinions regarding Sterling's "erratic behaviors" are "just your opinion." Sterling also presented documents showing that he consulted BOP "psychological services" when his father died in November 2017, that his BOP

-4-

"reentry plan" stated "that mental health is not referred," and that "I am not self-employed." The district court admitted those documents into the record; counsel failed to make them part of the record on appeal.

After Sanders completed his testimony regarding the other two modifications (see Parts III.B and C, *infra*), Judge Wilson clarified that the government was now seeking only an initial mental health evaluation, not treatment: "At this point all the Government wants is an assessment; is that right?" The prosecution responded, "Yes, Your Honor." The court then granted the government's motion "based on the things before the Court, including the testimony of the supervising officer." The court's written Order modified the first new condition to state: "Defendant must undergo mental health assessment under the guidance and supervision of the probation office." Sterling then filed a motion for reconsideration, arguing the Order must be vacated because the district court allowed Sterling to represent himself without obtaining a valid waiver of his right to counsel. The motion was denied without a hearing.

## II. The Self-Representation Issue

Sterling first argues the district court "abused its discretion in allowing Mr. Sterling to proceed *pro se* at the modification hearing." We disagree.

There is no Sixth Amendment right to counsel at a supervised release modification hearing. However, Rule 32.1(c)(1) of the Federal Rules of Criminal Procedure provides: "Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." We have held that waiver of the right to counsel at a supervised release *revocation* hearing must be knowing, intelligent, and voluntary because the defendant's liberty is at issue, as at a criminal trial. See United States v. Owen, 854 F.3d 536, 542 (8th Cir. 2017). We assume without deciding that the same principle applies to a

-5-

modification hearing, even though an immediate loss of liberty is seldom at risk. But the more elaborate procedures mandated by Rule 32.1(b)(2)(D) for revocation proceedings do not apply unless warranted by the circumstances in a particular case.

Judge Wilson granted Sterling's request to represent himself with the aid of standby counsel at the 2015 trial and sentencing of his underlying conviction. Thus, there was no need for the court to rule on Sterling's February 2019 notice that he would again represent himself at any supervised release modification or revocation proceeding. The government then petitioned for modifications including a mental health *treatment* requirement, which raised the possibility that Sterling's mental health had deteriorated. However, when the parties appeared for the modification hearing in late March, the government changed its request to a mental health assessment. Sterling opposed that request, prepared to conduct the defense, again with standby counsel's assistance. The mental health issue required prompt attention, as it affected the ongoing supervised release. The court allowed the hearing to proceed with Sterling representing himself, as he had requested.

In cross examining Sanders, Sterling demonstrated knowledge of the fact issues and applicable law, the ability to defend his position without disruption or delay, and respect for the court and the proceeding. The hearing gave the court no reason to believe that Sterling's mental health had changed to the point that his prior knowing and voluntary decision to represent himself was now in doubt. Thus, there was no abuse of the court's *sua sponte* discretion. Rather, the court proceeded in a manner well suited to ensuring the prompt and fundamentally fair resolution of the issues. Sterling's motion to reconsider the court's unfavorable Order because he had not validly waived his right to counsel was an untimely expression of "buyer's remorse."

### III.  The Challenged Conditions

In the Sentencing Reform Act of 1984, Congress authorized sentencing courts to impose a term of supervised release that includes conditions imposed in accordance with 18 U.S.C. § 3583 (c) and (d).  Some conditions are mandatory; those conditions are not here at issue.  All other conditions are discretionary -- they may be imposed "so long as the conditions are reasonably related to the sentencing factors enumerated in 18 U.S.C. § 3553(a), involve no greater deprivation of liberty than is reasonably necessary, and are consistent with the Sentencing Commission's pertinent policy statements."  United States v. Wilkins, 909 F.3d 915, 918 (8th Cir. 2018) (quotation omitted); see 18 U.S.C. § 3583(d).

The Conditions of Supervised Release provision of the advisory Sentencing Guidelines includes policy statements that separate discretionary conditions into two categories.  USSG § 5D1.3(c) sets forth thirteen "Standard Conditions" that "are recommended for supervised release."  Sections 5D1.3(d) and (e) set forth multiple categories of "Special Conditions" that are recommended in some circumstances and in other circumstances "may be appropriate on a case-by-case basis."  The sentencing court is expressly authorized to modify conditions of supervised release "at any time prior to the expiration or termination of the term," pursuant to Criminal Rule 32.1 and "the provisions applicable to the initial setting of the terms and conditions of post-release supervision."  18 U.S.C. § 3583(e)(2).

We review the district court's modification of supervised release conditions for abuse of discretion.  Standard conditions are discretionary and therefore must satisfy the factors set forth in 18 U.S.C. § 3583(d).  But standard conditions are rarely challenged.  Special conditions, on the other hand, are frequently challenged.  In reviewing special conditions for abuse of discretion, we weigh the statutory factors independently. While a special condition need not relate to all the factors, the district court must make "an individualized inquiry into the facts and circumstances

underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." Wilkins, 909 F.3d at 918 (quotation omitted). These distinctions are important in this case because two of the special conditions at issue modified standard conditions that are unchallenged.

**A. The Mental Health Assessment Condition.** Probation Officer Sanders testified that a mental health assessment is common at the start of supervised release, but the BOP did not conduct or order an assessment when Sterling completed serving his 57-month sentence. Sanders recounted Sterling's long history of mental health issues, evaluations, and treatment, and he described the erratic behavior observed at Sterling's home across the street from a public high school. Judge Wilson knew from presiding at Sterling's initial sentencing that he had assaulted two students with a firearm from his driveway. Based on testimony regarding Sterling's current mental state, struggles including suicidal thoughts and impulses, and the likely connection between Sterling's troubled mental health and violent criminal conduct, the record clearly supported the reasonableness of requiring a prompt mental health *assessment*.

On appeal, Sterling argues only that we should reverse all three modifications because the district court did not "make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." United States v. Brown, 789 F.3d 932, 933 (8th Cir. 2015) (quotation omitted). As to the mental health modification, this contention is clearly without merit. "[R]eversal is not required due to a lack of individualized findings if the basis for the imposed condition can be discerned from the record." United States v. Newell, 915 F.3d 587, 590 (8th Cir. 2019) (cleaned up). We have no difficulty discerning that the basis for this condition is reasonably related to "the nature and circumstances of the offense of conviction, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs." United States v. Sherwood, 850 F.3d 391, 394 (8th Cir. 2017) (quotation omitted).

**B. The Search Condition.** Standard Condition No. 10 of Sterling's supervised release provides that he "shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." This is a standard condition recommended by the advisory guidelines policy statement. See USSG § 5D1.3(c)(6). In late February 2019, Sterling moved "To Eradicate the Illegal Search & Abuse of Power by Officer Sanders," arguing Sanders was doing far more than the "visitation" Standard Condition 10 allowed. The government responded with a petition to modify the supervised release conditions to explicitly grant the probation officer expanded search authority. In support, the petition stated that a search condition "allows the probation officer to promote public safety through effective oversight of higher-risk defendants." It recited that Sterling has five prior possession of firearm charges, burglary and bank robbery convictions, pointed a firearm at students in front of his residence, and lives fifty feet from Pine Bluff High School. Officer Sanders's hearing testimony supported those allegations, and Judge Wilson knew of Sterling's dangerous firearm assault incident from presiding at his trial and sentencing.

On appeal, Sterling argues that this search condition is only applicable to felons required to register under the Sex Offender Registration and Notification Act ("SORNA"), deriving the argument from the text of 18 U.S.C. § 3583(d). We have previously rejected this argument, holding that "nothing in the language of § 3583(d) limit[s] the search condition *only* to felons who are required to register under SORNA." United States v. Winston, 850 F.3d 377, 380 (8th Cir. 2017). This prior decision is binding on our panel.[3]

Sterling argues more generally that this special condition is "totally unrelated" to his offense conduct and surrounding circumstances. Nothing could be further from

---

[3]Our panels expect attorneys to advise us when adverse precedent may control an issue they are raising.

the truth. His felon-in-possession offense included an enhancement for pointing a shotgun at two high school students. Weapons were found in his vehicle and home prior to his imprisonment for this firearm offense, and Officer Sanders testified that he saw a heavy BB gun resembling a firearm -- the same type of weapon Sterling used in the Northern District of Illinois bank robbery -- during a pre-release assessment of the home with Sterling's wife. The district court did not abuse its discretion in concluding that a search condition based upon reasonable suspicion was consistent with the requirements of 18 U.S.C. § 3583(d) and USSG § 5D1.3(b).

**C. The Financial Disclosures Condition.** Sterling's Standard Condition No. 5 provides that he "shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons." The Probation Office's Request for Modification stated:

> A financial disclosure condition enables the probation officer to deter and detect economic crimes, verify, and monitor self-employment. Mr. Sterling reports to be self-employed; therefore, additional documentation is required to verify self-employment.

At the modification hearing, Officer Sanders testified, "It is a condition that he has employment, but what we're asking for today is a financial disclosure to verify his employment. . . . [H]e gave me a transfer of powers from his company that he says that he runs and he also provided an employee nondisclosure agreement. . . . So I don't know exactly what he does." The court then asked, "What specifically do you want me to order him to do?" Sanders replied, "To provide financial documents as far as how he's making his money, where the money is coming from."

The advisory guidelines expressly provide, "Occupational restrictions may be imposed as a condition of supervised release." USSG § 5D1.3(e)(4). However, if a special condition of supervised release "restrict[s] a defendant's engagement in a

specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public." § 5F1.5(b). In United States v. Choate, we upheld a special condition prohibiting the defendant from maintaining self-employment during supervised release because the court "had before it evidence of three separate businesses Choate operated that all ended up perpetrating the same cycle of fraud," and the court "is not required to pit its imagination against Choate's to anticipate what sort of business he could put to fraudulent use." 101 F.3d 562, 566 (8th Cir. 1996).

Here, the government did not propose prohibiting self-employment. It proposed the less restrictive condition of requiring Sterling to provide financial information permitting a determination of whether his self-employment complied with the employment requirement in Standard Condition 5. At the hearing, Sterling protested that "I do work for a company," and Sanders is "trying to . . . get into my company's financial business which I am only an employee of." That of course was an admission that he was attempting to satisfy the employment standard condition in a way that might warrant a restriction on self-employment.

We conclude that, cabined by the district court's careful questions, the government presented sufficient evidence to warrant a limited financial disclosure special condition for this purpose. But that is not the special condition the government proposed and the district court unfortunately entered. Rather, the district court entered an order requiring Sterling to "provide the probation officer with access to any business records or requested financial information (including unexpected financial gains)," which it may release "to the US Atty's Office."

The guidelines expressly recommend imposing a special condition requiring the defendant "to provide the probation officer access to any requested financial information" in specific circumstances -- "[i]f the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine."

USSG § 5D1.3(d)(3). Our court has upheld broad financial disclosure conditions in other cases where the defendant's offense history and characteristics suggested they were needed, such as when the defendant is obligated to pay child support, or when his prior convictions centered on "money and greed" or debt. See Sherwood, 850 F.3d at 395-96 (collecting cases). None of those circumstances is present here.

The condition orders Sterling to provide "any requested financial information, a hopelessly vague and overbroad term when no context is provided." Id. at 397, citing United States v. Thompson, 777 F.3d 368, 379-80 (7th Cir. 2015). The requirement to disclose "unexpected financial gains" is particularly troublesome. Absent evidence of unlawful activity, the probation office and the U.S. Attorney have no valid basis for requiring Sterling to disclose that he hit the jackpot in a state lottery, or received a substantial inheritance. This concern is not merely theoretical. Secrecy can provide important protection to persons who receive financial windfalls. This proposed special condition intrudes significantly on Sterling's liberty without clearly defining its purpose and boundaries.

The government argues this condition will deter Sterling from fraudulent conduct like impersonating a diplomatic officer and is necessary in light of his history of "violent, monetary crimes against others." But the government presented no evidence of prior "monetary crimes." Bank robbery is a crime of violence, not deceit. And attempting to thwart traffic officers with a fraudulent claim of diplomatic immunity is criminal, but it is not a financial crime. Nothing in the record indicates Sterling has previously committed or is at risk of committing financial fraud. On this record, "[m]oney, greed, and debt simply had nothing to do" with Sterling's crimes. Sherwood, 850 F.3d at 396. Although the diplomatic immunity materials found in the warrant search of his home no doubt raised suspicions, that subject was not explored in his criminal trial and sentencing or at the modification hearing. The government had the burden of proof and does not prevail if it had relevant evidence it failed to present. The government also argues this condition is needed to monitor

Sterling's self-employment. But absent evidence of other unlawful activity, there would not be valid grounds to revoke supervised release and incarcerate Sterling if his company proves to be a financial fantasy and "erratic behavior" makes him unemployable.

Because the government failed to tailor the proposed special condition to the employment circumstances that warranted modification of Standard Condition 5, the district court imposed an overbroad special condition that imposes a "greater deprivation of liberty than is reasonably necessary," 18 U.S.C. § 3583(d)(2), and is not "the minimum extent necessary to protect the public," USSG § 5F1.5(b). Accordingly, we vacate this special condition.

## IV. Conclusion

For these reasons, we vacate the special condition of Sterling's supervised release requiring him to provide "financial information" and otherwise affirm the Order of the district court dated March 26, 2019.

_____