# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-1744

———————————————

United States of America

*Plaintiff - Appellee*

v.

Clayton Jackson

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas

——————————

Submitted: January 10, 2022
Filed: May 6, 2022
[Published]

——————————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

——————————

PER CURIAM.

Clayton Jackson pled guilty to three counts of threatening to assault and murder a federal official, 18 U.S.C. § 115(a)(1)(B), and two counts of mailing threatening communications, 18 U.S.C. § 876(c). The district court[1] sentenced

———————————

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Jackson to 480 months of imprisonment followed by three years of supervised release. On appeal, Jackson challenges the substantive reasonableness of his sentence and two of the special conditions of supervised release. We affirm.

## I. Background

A grand jury indicted Jackson in early June 2020, after Jackson sent two letters promising to kill two Federal Bureau of Investigation ("FBI") agents and then verbally reiterated similar threats. Jackson asserted in one letter to an agent that he had "two bullets with both your names on it. And I swear with everything in me, I will stop at nothing to kill both of you. So just know, you will be seeing me very soon. That's not a threat. It's a promise." He also claimed to know where one of the FBI agents lived. When another FBI agent interviewed Jackson at a detention facility where he was held on other charges, Jackson repeatedly emphasized his sincere intent to kill one of the FBI agents, explaining "it's a guarantee, I mean, it's a promise or I'll die trying."

Jackson pled guilty to all five counts in November 2020. The presentence investigation report ("PSR") calculated a total offense level of 28 and his criminal history category as VI, resulting in an advisory range of 140 to 175 months of imprisonment under the United States Sentencing Commission Guidelines Manual ("Guidelines"). At the sentencing hearing, neither party objected to any aspect of the PSR and the district court adopted it.

During the sentencing hearing the government introduced three letters that Jackson did not dispute he sent while in custody. Jackson sent the first letter to an unidentified person in June 2020, after his indictment. In it, Jackson explained he would make an excuse to the presiding judge that he "was just pissed at the time" when he made certain threats. He then wrote in the same letter: "But one thing is for sure, [one of the FBI agents] will be killed. And that's how we'll make a name for our organization[,]" later identified in the letter as White Pride Mafia. Jackson asserted that while "[a]ll of these people look and think I'm blowing smoke[,]"

White Pride Mafia would become "a household name" once he "wipe[d] out" four people, including one of the FBI agents he previously threatened, a U.S. Attorney, and two of Jackson's associates. Jackson also indicated he had received "private info" about these individuals. Jackson ended this letter by specifying he would communicate further about "carrying out our plans" once he worked the details out for his escape from custody.

The second letter the government introduced was one Jackson attempted to send from jail in January 2021, after he pled guilty to the federal charges. In the letter, Jackson described a plan to escape from federal custody when he was transported for his sentencing hearing. In March, Jackson unsuccessfully tried to escape from custody by assaulting an officer and attempting to take his keys.

The third letter introduced was one Jackson sent shortly after his failed escape attempt. Jackson addressed this letter to the White Knights of the Ku Klux Klan, requesting assistance in finding and "taking care" of two individuals he had previously threatened to kill in a prior letter.

Considering Jackson's offense, relevant conduct, and the need to protect the threatened individuals, the government argued for a sentence of "at least" twenty years of imprisonment. Jackson, however, requested a sentence within the Guidelines range.

The district court considered the parties' arguments, the Guidelines range, and the 18 U.S.C. § 3553(a) sentencing factors, and sentenced Jackson to 480 months of imprisonment followed by three years of supervised release. The district court explained it believed Jackson intended to carry out his death threats and showed "no remorse." The district court explained a long sentence was needed to "protect the public," "deter [Jackson] and others from similar conduct in the future," "show respect for the law," and "reflect the seriousness of this offense."

## II. Analysis

On appeal, Jackson argues his sentence is substantively unreasonable and the district court abused its discretion in imposing two special conditions of supervised release. Neither argument prevails.

### A. Substantive Reasonableness

We review the substantive reasonableness of a sentence for an abuse of discretion. *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "It will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Id.* (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

Jackson advances two arguments on this front. He first argues the 140-to-175-month sentence recommended by the Guidelines adequately accounted for all relevant sentencing factors. He maintains the district court improperly double counted factors already considered in the enhancements when it decided to vary upward. Jackson next argues his "480-month sentence radically exceeds nationwide norms[,]" asserting that similarly situated defendants across the country received a fraction of the time for similar convictions. Jackson contends all this amounts to a substantively unreasonable sentence that is "greater than necessary to achieve the goals of sentencing." 18 U.S.C. § 3553(a).

Jackson's arguments are unavailing. As we have explained, a sentencing "court is not prohibited 'from determining that the weight the Guidelines assigned to a particular factor was insufficient.'" *United States v. Donahue*, 959 F.3d 864, 867 (8th Cir. 2020) (quoting *United States v. Thorne*, 896 F.3d 861, 865 (8th Cir. 2018)). "It simply must take care when doing so." *Id.* Moreover, a sentencing court may consider uncharged relevant conduct when deciding whether to vary upward. *See United States v. Thomas*, 760 F.3d 879, 889 (8th Cir. 2014). Here, the district

court took care in concluding the Guidelines range insufficiently accounted for the sentencing factors. It concluded the Guidelines calculation did not adequately account for Jackson's misconduct, criminal history, lack of remorse, and continued threatening behavior toward others. The district court explained Jackson had demonstrated that he was "obviously [] intent" on carrying out his death threats, that "a big factor in assessing the appropriate sentence" was the need to protect the public, and also that the sentence was needed to deter Jackson and others from engaging in similar criminal conduct, promote respect for the law, and reflect the seriousness of the offense. *See* § 3553(a)(2)(A)–(C).

And contrary to Jackson's argument, the district court also considered the need to avoid disparate sentences and explained it would impose the same sentence on "anyone who is charged with" the same crimes "under similar circumstances." Particularly in instances like this, where the upward variance was based in part on uncharged relevant conduct and the district court explained its case-specific reasoning for imposing the sentence it did, we will not reverse based on alleged sentencing disparities with unrelated offenders sentenced by different judges. *See United States v. Keys*, 918 F.3d 982, 989 (8th Cir. 2019).

All this leads us to conclude it was not unreasonable for the district court to vary upward here. The sentence imposed was no doubt a significant increase above the Guidelines range. But considering Jackson's persistent threats against specific FBI agents and others, as well as his efforts to recruit others to kill, we cannot say the sentence is substantively unreasonable. We thus conclude the district court did not abuse its considerable discretion when imposing the sentence. *See Donahue*, 959 F.3d at 867.

## B. Special Conditions

Jackson next challenges two special conditions of his supervised release. Specifically, Jackson challenges a condition requiring that he both "participate in a substance abuse treatment program under the guidance and supervision of the

probation office, which may include drug and alcohol testing, out-patient counseling, and residential treatment," and abstain from using alcohol during treatment. He also challenges the condition that he participate in mental health treatment during his supervised release under the guidance of the probation office. Jackson argues the district court abused its discretion by imposing these special conditions without making the necessary individualized findings regarding their appropriateness.

Because Jackson did not object to these special conditions during his sentencing, we review his arguments on appeal for plain error. *See United States v. Robertson*, 948 F.3d 912, 919 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 298 (2020). Plain error requires Jackson "show that the district court committed an error that is clear under current law, that the error affects his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Wisecarver*, 644 F.3d 764, 775 (8th Cir. 2011)).

"Sentencing judges have discretion to impose special conditions of supervised release so long as the conditions are reasonably related to the sentencing factors enumerated in [] § 3553(a), involve no greater deprivation of liberty than is reasonably necessary, and are consistent with the Sentencing Commission's pertinent policy statements." *United States v. Sherwood*, 850 F.3d 391, 394 (8th Cir. 2017) (quoting *United States v. Cooper*, 171 F.3d 582, 585 (8th Cir. 1999)). "In crafting special conditions, the district court must be careful to conduct an inquiry 'on an individualized basis,' looking at the specific facts of the case." *United States v. Wallette*, 686 F.3d 476, 483–84 (8th Cir. 2012) (quoting *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006)). While we encourage individualized findings on each imposed special condition, however, we need not vacate a special condition without such findings "where the basis for the special condition can be discerned from the record." *United States v. Hart*, 829 F.3d 606, 609 (8th Cir. 2016).

Jackson does not show plain error here because the record reflects the basis for both special conditions. We first conclude the record adequately supports the

special condition requiring Jackson participate in a substance abuse program and abstain from alcohol use during the program.  We have upheld special conditions requiring participation in substance abuse treatment programs and restricting alcohol use during treatment when the record evidence shows the defendant abuses alcohol or has "a substance abuse problem that might be exacerbated by alcohol use." *Wallette*, 686 F.3d at 484.  The undisputed facts established that Jackson began consuming alcohol as a 16-year-old, had a history of drinking alcohol daily, used marijuana as a teenager, and previously participated in four substance abuse programs.  Moreover, Jackson admitted that "he drank to relieve stress," and "if he drank hard liquor, he would get angry and at times would become violent."  Considering Jackson's history, we conclude the district court did not plainly err by requiring Jackson participate in a substance abuse program and abstain from alcohol during his participation.  *See United States v. Hataway*, 933 F.3d 940, 946 (8th Cir. 2019); *Wallette*, 686 F.3d at 484.

Similarly, the record supports imposition of the special condition requiring Jackson to participate in mental health treatment under the guidance of the probation office.  In order to lawfully "impose the special condition of participation in a mental health program, the court must have reason to believe the party is in need of such treatment."  *United States v. Wynn*, 553 F.3d 1114, 1120 (8th Cir. 2009) (quoting *United States v. Kent*, 209 F.3d 1073, 1076 (8th Cir. 2000)).  Here, the undisputed facts showed Jackson had a history of erratic violent behavior and persistently made violent threats.  In addition, he had previously received mental health treatment and been put on suicide watch by jail staff after his failed escape from custody.  Considering these facts, we conclude the district court did not plainly err in imposing the mental health treatment special condition.  *See id.* (affirming the imposition of a similar condition when the defendant had a history of violent and threatening conduct, had previously been referred for mental health treatment, was prescribed medications, and had expressed homicidal and suicidal thoughts).

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____