# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1793

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Stephen D. Morais, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 2011
Filed: March 13, 2012

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Stephen Morais pleaded guilty to two counts of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2). The district court sentenced him to concurrent terms of 97 months' imprisonment and a lifetime of supervised release. The court also imposed a $15,000 fine. On appeal, Morais challenges his term of imprisonment, the imposition of a fine, and two special conditions of his supervised release. We affirm Morais's sentence, the fine, and one of the special conditions, but remand with instructions that the district court modify its written judgment to conform to its oral pronouncement of the other special condition of supervised release.

I.

In May 2009, a child abuse hotline received a report of suspicious behavior by Morais involving two sisters, three-year-old H.R. and six-year-old R.W. According to the report, R.W. and her brother, D.A., saw Morais take a photograph of H.R. with her pants removed. In subsequent interviews, R.W. and D.A. stated that Morais, who was acquainted with the children's family through church, used his cell phone to photograph H.R. at a park.

Law enforcement officers executed a search warrant at Morais's residence and seized, among other things, two cell phones, six computer thumb drives, and four laptop computers. Forensic examination of the computers and thumb drives revealed 8,200 images of child pornography, which Morais had acquired between January 1998 and May 2009. The examination of Morais's laptop computer also revealed sixteen images of H.R. with her genital area exposed. Morais admitted that he used his cell phone to photograph H.R. while her genitals were exposed, and he admitted downloading numerous images of nude children from the Internet and possessing them on his computers and digital storage devices.

A grand jury charged Morais with five counts of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Morais pleaded guilty to two counts of receiving child pornography.

The district court calculated an advisory guideline range of 97 to 121 months' imprisonment and a fine of $15,000 to $150,000, based on a total offense level of 30 and criminal history category I. The government suggested a sentence within the advisory guideline range, while Morais sought the statutory minimum sentence of 60 months' imprisonment on each count. He argued that the statutory minimum term was appropriate due to the "relatively tame" nature of the child pornography that he

collected, and due to his diagnosis of autism. In support of the latter argument, Morais offered the testimony of Dr. James Stone, a neuropsychologist. Dr. Stone testified that Morais suffers from "mind blindness," which makes it difficult for him to "perceive, predict, and react appropriately to another person's thoughts, emotions, et cetera, to be able to put yourself in another person's shoes, essentially." The expert testified that Morais has difficulty with social interaction, that autistic individuals tend to collect things, and that Morais does not understand the "social basis" for the prohibition on child pornography. Dr. Stone also opined that Morais's autism placed him at risk of being victimized or manipulated in prison.

The district court sentenced Morais to 97 months' imprisonment on each count and imposed a $15,000 fine. The court also imposed a lifetime term of supervised release with several special conditions, two of which are relevant here. Special condition one provides that Morais shall, in certain circumstances, "submit to any means utilized by the probation office to track his whereabouts or location at any time." Special condition four restricts Morais's access to the Internet.

II.

A.

Morais argues that the district court imposed a substantively unreasonable sentence. Citing his autism and the nature of the child pornography he possessed, Morais argues that the district court's sentence is greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, *Gall v. United States*, 552 U.S. 38, 41 (2007), and we presume that a sentence imposed within the advisory guideline range is substantively reasonable. *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009).

The sentence imposed was not unreasonable. A district court has substantial discretion in determining how to weigh the § 3553(a) factors. The court here considered and rejected Morais's argument that the nature of his child pornography warranted a downward departure or variance. The court explained that it was "difficult to engage in any exercise of differentiation that one is more bad than the other," and that such a distinction failed to provide adequate deterrence, promote respect for the law, or reflect the seriousness of the offense. Morais argues that the district court did not "specifically address" his arguments regarding the impact of his autism diagnosis. But whether the court adequately explained the sentence is a matter of procedural soundness, not substantive reasonableness, and in any event, "not every reasonable argument advanced by a defendant requires a specific rejoinder by the judge." *United States v. Gray*, 533 F.3d 942, 944 (8th Cir. 2008). On substance, the district court heard extensive testimony from Dr. Stone, who testified on cross-examination, that while autism was related to Morais's collecting tendencies, autism did not necessarily dictate the content of what he chose to collect. The court also posed questions to Dr. Stone, who testified that he had neither done nor seen any research on how individuals with autism fare in prison, calling it an "unstudied situation," and who conceded that he was unaware whether Morais could receive appropriate treatment in prison. The record thus included sufficient reasons for the court reasonably to adopt the recommendation of the Sentencing Commission that a sentence of 97 months was appropriate.

B.

Morais next challenges the district court's imposition of a fine of $15,000. The court directed that during his term of incarceration, Morais must pay at least $25 quarterly or ten percent of his prison earnings, whichever is greater. The court ordered that after release, Morais must pay monthly installments of at least ten percent of his monthly household income, and in no case less than $200 per month. Morais objected at sentencing on the ground that he would be unable to pay a fine,

because he lacked sufficient assets or prospects for employment. On appeal, Morais argues that the district court failed to address the relevant statutory or guideline factors, and erred in finding that he would be able to pay the fine. We review the district court's imposition of a fine and its determination of the amount of the fine for clear error. *United States v. Allmon*, 500 F.3d 800, 807 (8th Cir. 2007).

The district court has statutory authority to impose a fine, 18 U.S.C. § 3571, and the sentencing guidelines recommend imposition of a fine in all cases, unless the defendant establishes that he is unable to pay and is not likely to become able to pay a fine. USSG § 5E1.2(a). In determining whether to impose a fine and the amount of any fine, the court must consider a number of factors under the governing statutes and the applicable sentencing guideline. *See* 18 U.S.C. §§ 3553(a), 3572(a); USSG § 5E1.2(d). The district court need not provide detailed findings on each of the factors, but the court must consider at least "the factors relevant to the particular case before it." *United States v. Berndt*, 86 F.3d 803, 808 (8th Cir. 1996). The court should make findings regarding the defendant's ability to pay, *see Allmon*, 500 F.3d at 807-08, and should not impose a fine that the defendant has little chance of paying. *Berndt*, 86 F.3d at 808.

The record at sentencing showed that Morais holds college degrees in math and physics. Although he had no assets and credit card debt of approximately $40,000 at the time of sentencing, Morais reported several instances of prior employment. He worked as a weapons mechanic in the United States Air Force from 1977 to 1981, and served in the Army Reserves from 1981 through 2006. The latter service included tours in Iraq and Kosovo. Before his deployment to Iraq in 2005, Morais worked part time as a math tutor at the University of Arkansas and part time at McDonald's restaurant, and he worked as a cashier at Wal-Mart in 2007 and 2008. At sentencing, Morais testified that he had "answered a lot of [his] math questions" during his incarceration, and had discovered something that "could actually be used as a product." He explained that his discovery "can bring [him] a lot of money, possibly,"

and he could "do that anywhere," including in prison. Morais also stated that he had a potential job opportunity as an engineering consultant.

The district court overruled Morais's objection to imposition of a fine. The court remarked: "I recall . . . [Morais] telling me he believes he has realistic . . . aspirations of earning perhaps a million dollars. He may or may not be able to earn that, but I think the fine is realistic and so I'll overrule that objection."

We see no clear error in the district court's conclusion that Morais could pay the minimum fine recommended by the sentencing guidelines through payments of $200 per month over his term of supervised release. The court's discussion of the relevant factors was cryptic, but the court did address the key issue: "the defendant's income, earning capacity, and financial resources." 18 U.S.C. § 3572(a)(1). As the court observed, Morais himself projected an ability to earn money during and after incarceration, and the court was entitled to consider his college education and prior employment in determining that payment of the fine was "realistic." We are not left with a definite and firm conviction that a mistake was committed. *See United States v. Wright*, 540 F.3d 833, 847 (8th Cir. 2008).

C.

Morais next argues that the district court's written judgment must be modified because it conflicts with the court's oral pronouncement of special condition one. In pronouncing sentence, the district court stated: "If and when deemed necessary, *due to an inability to keep track of the defendant's whereabouts during supervised release*, the defendant shall submit to any means utilized by the probation officer to track his whereabouts or location at any time." S. Tr. 158 (emphasis added). The written judgment, however, provides that, "[a]s need be, *should the defendant fail to comply with sex offender registration*, he shall submit to any means utilized by the probation office to track his whereabouts or location at any time." R. Doc. 35, at 4

(emphasis added). The parties agree that the two statements conflict, because each establishes a different condition precedent for the use of tracking devices. Morais evidently views the oral pronouncement as narrower, because it allows the use of tracking devices only when the probation office demonstrates "an inability to keep track of his whereabouts," whereas the written judgment allows tracking upon Morais's failure to comply with sex offender registration, even when the probation office nonetheless is able to keep track of him. The government apparently sees the oral pronouncement as broader: there may be cases in which the probation office cannot track Morais's whereabouts even when he has complied with sex offender registration. As we do not disagree with the parties that the oral pronouncement and written judgment conflict, the oral sentence controls. *United States v. Foster*, 514 F.3d 821, 825 (8th Cir. 2008). We therefore remand with instructions to amend the written judgment to conform to the oral pronouncement of special condition one. *See United States v. Durham*, 618 F.3d 921, 945 (8th Cir. 2010).

D.

Finally, Morais challenges special condition four of his supervised release. This condition provides that Morais "shall not have access to an internet-connected computer or other device with internet capabilities or access the internet from any location without prior approval by the probation office and for a justified reason." Morais objected to the condition at sentencing, arguing that "less restrictive limits" should be used. On appeal, he argues that the condition is not reasonably related to the pertinent § 3553(a) sentencing factors and involves a greater deprivation of his liberty than is reasonably necessary. He also argues that the district court failed to make individualized findings regarding the need for the restriction. We review the district court's imposition of special conditions for abuse of discretion. *Durham*, 618 F.3d at 933.

"A district court has broad discretion to impose special conditions of supervised release, so long as each condition complies with the requirements set forth in 18 U.S.C. § 3583(d)." *United States v. Springston*, 650 F.3d 1153, 1155 (8th Cir. 2011). Under § 3583(d), a district court may impose special conditions of supervised release if the conditions are reasonably related to the sentencing factors set forth in § 3553(a), involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a), and are consistent with any pertinent policy statements issued by the Sentencing Commission.

Morais asserts that the district court failed to conduct an individualized inquiry into the need for special condition four and instead imposed it "based on a classification of individuals [that Morais] now falls within—sex offender." Our cases call for the district court to "conduct an inquiry on an individualized basis," and say that the court "may not impose special conditions categorically on all individuals convicted of certain offenses." *United States v. Kelly*, 625 F.3d 516, 520 (8th Cir. 2010) (internal quotation omitted). The lack of individualized findings, however, does not require reversal if we can discern from the record the basis for the court's imposition of the condition. *United States v. Thompson*, 653 F.3d 688, 694 (8th Cir. 2011). In overruling Morais's objection, the district court stated that special condition four was "fully justified" by Morais's downloading of child pornography at his residence, and the restriction was "broad enough to permit [Morais] to have access, with prior approval and for a justified reason." We are satisfied by this explanation that the court conducted an individualized inquiry, and the basis for special condition four is evident from the record in any event.

Given Morais's use of the Internet to obtain thousands of images of child pornography, a condition limiting his Internet access is reasonably related to the statutory purposes of deterrence and protecting the public. *See United States v. Mark*, 425 F.3d 505, 509 (8th Cir. 2005). The condition is thus permissible so long as it does not involve a greater deprivation of liberty than is reasonably necessary.

Morais relies on *United States v. Crume*, 422 F.3d 728 (8th Cir. 2005), and *United States v. Wiedower*, 634 F.3d 490 (8th Cir. 2011), for the proposition that because he used his computer "simply" to receive and possess child pornography, and not to produce or distribute it, the restriction is overbroad.* *Crume* vacated a comparable condition for a defendant convicted of receiving and possessing child pornography, after citing the absence of "more serious abuses," and expressing "confiden[ce] that the district court can impose a more narrowly-tailored restriction on [the defendant's] computer use through a prohibition on accessing certain categories of websites and Internet content and can sufficiently ensure his compliance with this condition through some combination of random searches and software that filters objectionable material." 422 F.3d at 733. *But cf. United States v. Lifshitz*, 369 F.3d 173, 192 (2d Cir. 2004) ("It is well known that experienced computer users are quite resourceful in circumventing the software employed, and federal officials have even publicly remarked upon this fact."). *Wiedower* vacated a broader condition that banned the use of *any* computer, whether connected to the Internet or not, without the prior approval of the probation office, for a defendant convicted of possessing two images and three short videos of child pornography. 634 F.3d at 492. The panel reasoned that the defendant "simply" used his computer to receive and possess child pornography, and that he "may have done so frequently or for an extended period of time" did not mean that the computer and Internet restrictions were justified. *Id*. at 495.

Despite some broad language in these prior decisions, we decline to construe *Wiedower* and *Crume* as establishing a *per se* rule that a district court may never impose a prior-approval Internet use restriction based on a defendant's receipt and possession of child pornography. *See Mark*, 425 F.3d at 510 (stating, after *Crume*,

---

*The government argued at sentencing that Morais produced child pornography when he used a cell phone to photograph a three-year-old girl with her genital area exposed, but the district court was not convinced. S. Tr. 132-33.

that "[w]e reserve judgment on whether a *complete ban* on Internet access, in some case of a defendant involved in possessing child pornography, may be reasonably necessary within the meaning of § 3583(d)(2)") (emphasis added). Such a *per se* rule would be in tension with our cases holding that a district court should fashion conditions of supervised release on an individualized basis in light of the statutory factors, *see* 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(B), (a)(2)(C), (a)(2)(D), and not by treating defendants as part of a class that is defined solely by the offense of conviction. *See Kelly*, 625 F.3d at 519-20.

Morais's conduct is more egregious than anything described in *Crume* or *Wiedower*: he collected 8,200 images of child pornography over more than a decade. PSR ¶ 23. The images were in large part downloaded from the Internet, and they depicted children ranging in age from 3 to 13 years. *Id*. ¶¶ 20, 23. The district court found that the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. *Id*. ¶ 33; S. Tr. 135. There was also reason for the court to be concerned about incorrigibility. Morais's own expert, Dr. Stone, testified that Morais was diagnosed with autism and a compulsive nature, and that without successful treatment, Morais was likely to repeat the same conduct. S. Tr. 95-97. The Eleventh Circuit thought a restriction on Internet use without prior approval was sufficiently narrow for a defendant who possessed over 4,000 images of child pornography, *United States v. Zinn*, 321 F.3d 1084, 1093 & n.11 (11th Cir. 2003), noting that "the particular facts of this case highlight the concomitant dangers of the Internet and the need to protect both the public and sex offenders themselves from its potential abuses." *Id*. at 1093. We reach the same conclusion with respect to Morais. *Cf. United States v. Lantz*, 443 F. App'x 135, 144 (6th Cir. 2011) ("[T]here are many cases that have struck down internet bans of various types because the sentencing conduct involved 'only' possession of child pornography, and not something more heinous. This circuit is not part of that 'consensus,' and we will not join today.").

The special condition at issue here is not a complete ban on use of the Internet. With prior approval of the probation office, Morais may access the Internet for legitimate purposes of research, communication, and commerce. Given the importance of the Internet as a resource, we expect that the probation office will not arbitrarily refuse such approval when it is reasonably requested and when appropriate safeguards are available. But we conclude that the condition requiring prior approval does not involve a greater deprivation of liberty than is reasonably necessary to protect the public and to deter criminal activity in light of the record in this case.

*     *     *

The judgment of the district court is affirmed with respect to the term of imprisonment, the fine, and special condition four of supervised release. We remand with instructions to amend the written judgment to conform to the district court's oral pronouncement of special condition one.

—————————————————