# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3849

_____

United States of America

*Plaintiff - Appellee*

v.

James B. Norris, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 23, 2022
Filed: March 13, 2023

_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

James B. Norris appeals the district court's[1] denial of his pro se motion to terminate supervision or modify conditions of supervised release. Norris argues that the district court violated Federal Rule of Criminal Procedure 32.1 and his Fifth

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

Amendment due process rights when it denied Norris's motion in a sealed document without the procedural protections of appointed counsel, a hearing, and the opportunity to review and challenge the U.S. Probation Office's recommendation. Additionally, he challenges the terms of his supervised release as overbroad and unconstitutional. We affirm.

## I. *Background*

In 2009, Norris pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). He was sentenced to 37 months' imprisonment, followed by a lifetime of supervised release. One of the supervised-release conditions that the court imposed on Norris was a ban on his usage of computers to access the internet without prior approval of the probation office. *See* R. Doc. 32, at 4, ¶ 12 ("The defendant shall not possess or use a computer, peripheral equipment, or any other devices with access to any 'on line computer services' at any location (including employment), or subscribe to or use any Internet service, without the prior written approval of the probation office.").

In July 2021, Norris violated special conditions of his supervised release. A final revocation hearing was held on August 24, 2021. At the hearing, Norris did not contest the violations. He admitted to violating the ban on his usage of computers to access the internet without prior approval of the probation office. Based on Norris's admission, the district court found Norris in violation of the terms and conditions of his supervised release.

The court then explained that the advisory Guidelines range for the violation was three to nine months, followed by a supervised release period of five years to life. Norris did not object. The court then adopted the Guidelines calculations. The government requested four months' imprisonment, while Norris requested three months' imprisonment.

Norris then made the following statement to the court:

I've been trying for so many years to stay compliant, and I—it's becoming so frustrating after this many years. And I feel it's so difficult to try to get these conditions to be made more reasonable, and it's difficult to deal with a sentence, a lifetime sentence of supervision, when I have to consider the time that I'm required to register for is not even that long. I have—it's very difficult for me to live under all of this.

R. Doc. 87, at 6. The court responded that Norris's "remedy . . . was to abide by all the conditions to the T, to the letter, and then apply to have a reduction in [his] supervision." *Id.* The court advised that Norris would need to "start over." *Id.* The court was "not saying that [Norris] couldn't get a reduction . . . eventually." *Id.*

Norris expressed frustration with seeing violations that he disputed appearing on his file. The court responded, "Had you been a perfect participant in supervised release, chances are I might have been willing to reduce your time of supervised release. But you haven't." *Id.* at 7.

The court then revoked Norris's supervised release. "Pursuant to . . . Section 3553(a) and all the factors thereunder, and also in view of the sentencing objectives of just punishment, general deterrence, and incapacitation, and in order to fashion a sentence that's sufficient but not greater than necessary to comply with the statute," the district court sentenced Norris to "a term of three months." *Id.* at 7–8. The court did afford Norris "some relief" by sentencing Norris to 20 years of supervised release instead of a lifetime of supervised release. *Id.* at 8. The court advised Norris that he must "comply with all of the conditions of supervision, both the mandatory conditions that have been adopted by this Court and the special conditions . . . imposed against [him] originally." *Id.* One of those special conditions was the ban on internet usage without prior approval of the probation office. *See id.* The court advised Norris that

he had "a right to appeal from the sentence" within 14 days. *Id.* Norris indicated that he understood. Norris did not appeal.

Shortly after the revocation hearing, on September 1, 2021, Norris filed a pro se motion to terminate his supervision or modify the conditions of his supervised release. The motion was a one-page conclusory letter requesting termination of his supervised release. On October 25, 2021, Norris, acting pro se, "provid[ed] additional information for consideration of [his] motion." R. Doc. 71.[2] The filing contained five attachments, which were all law review articles or other articles about probation and supervised release. *See id.*

On October 28, 2021, a "Report on Offender Under Supervision" (Report) was docketed as a sealed document. R. Doc. 72, at 1 (all caps omitted). The Report provided as follows:

SUPERVISION SUMMARY

The following supervision summary is respectfully submitted to the Court in response to a motion filed by James Norris for an early termination from supervised release. Pursuant to 18 U.S.C. § 3564(c) and 3583(e)(1), Courts are permitted to terminate supervised release or probation in felony cases after one year, if such action is warranted. Norris' motion also requested his conditions be modified.

On April 17, 2011, Norris was released from the Bureau of Prisons, during which time his supervised release commenced. On August 24, 2021, Norris' supervised release was revoked. Norris was on supervised release for approximately ten years and three months when he committed the violations that led to his revocation. While on supervision, seven violation reports had been submitted to the Court.

_____

[2]The clerk docketed the filing on October 26 as "Amendment/Supplemental Pleadings." *See id.* (all caps omitted).

-4-

> Norris' noncompliance included possessing internet capable devices without permission, accessing the internet without permission, viewing obscene material, and his belief that he did not have to abide by the Court ordered special conditions. Norris was not considered amenable to supervision in the community and he [was] sentenced to 3 months custody following the revocation of his supervised release.[] Norris filed the motion while he was in custody on the revocation for violating his conditions.
>
> Norris was released on October 13, 2021 to begin his new term of supervised release. Norris has returned to his previous home plan and his previous employer.
>
> On October 21, 2021, Assistant U.S. Attorney Hal Goldsmith was contacted regarding this matter and advised he would be opposed to an early termination of supervision or modification of conditions at this time.
>
> RECOMMENDATION:
>
> The U.S. Probation Office respectfully recommends that the motion for early termination and modification of conditions be denied due to the fact Norris was recently revoked for violating conditions of his supervision that were put in place to protect the community.

*Id.* at 1–2 (bold omitted). The supervising U.S. probation officer had signed the report on October 27, 2021, and the U.S. probation officer had signed the report on October 26, 2021. The district court marked, "I agree with the recommendation of the Probation Officer" and signed the Report on October 28, 2022. *Id.* at 2.

On November 9, 2021, Norris, acting pro se, filed "empirical evidence for consideration to [his] motion for termination of supervision." R. Doc. 73, at 1. The filing attached 171 pages of secondary sources relating to supervised release. The clerk docketed the filing as "Memorandum in Support . . . re Motion to Modify

Conditions of Release." *Id.* (all caps omitted). Then, on November 15, 2021, Norris filed more "empirical evidence for consideration of motion," R. Doc. 74, at 1, which attached 703 pages of secondary materials. The clerk docked the filing as "Additional Supplemental Pleadings." *Id.* (all caps omitted).

On November 22, 2021, defense counsel entered an appearance on Norris's behalf. Defense counsel moved for an extension of time to file a notice of appeal. In that motion, defense counsel noted, in relevant part:

> According to a voice mail his probation officer left for Mr. Norris at his home number . . . on or about Tuesday, November 16, 2021, this court entered its order denying Mr. Norris's *pro se* Motion to Terminate Supervision or Modify Conditions of Release (doc. #68) on October 28, 2021. There is no entry within Mr. Norris's docket in this case described in any way in which to identify it as the order denying relief. There are, however, two anonymous and unidentified docket entries, including doc. #72, which occurred sometime between doc. #71 (entered on October 26, 2021) and doc. #73 (entered on November 9, 2021).

R. Doc. 76, at 1. Defense counsel argued that the "court should make a finding of good cause to extend the time to file a Notice of Appeal" "[b]ecause Mr. Norris had no reason to know of the court's October 28, 2021 order denying his pro se Motion for Termination of Supervision or for Modification of Conditions until the voice mail message left last week." *Id.* at 2.

Defense counsel also filed a motion to "unseal, for purposes of a potential appeal of th[e] court's order denying Mr. Norris's *pro se* Motion To Terminate Supervision or Modify Conditions of Release, documents 70 and 72 herein and to release those two documents to [counsel]." R. Doc. 77, at 1.[3] Defense counsel also

---

[3]On October 6, 2021, a "Report on Offender Under Supervision" was docketed as a sealed document. R. Doc. 70 (all caps omitted). The report "request[ed] [that] the

"request[ed] that these two documents be resealed once they have been released to [counsel]." *Id.*

On November 23, 2021, the district court entered a docket text order granting the motion to unseal documents 70 and 72 and entered a docket text order granting the motion for extension of time to file the notice of appeal. *See* R. Doc. 78.

On December 13, 2021, Norris filed a Notice of Appeal, appealing the district "court's order denying [his] motion for early termination of supervised release (doc #72), filed on October 28, 2021." R. Doc. 81, at 1.

## II. *Discussion*

On appeal, Norris asserts that the district court erred in denying his pro se motion to terminate supervision or modify the conditions of his supervised release. First, he argues that the district court violated Federal Rule of Criminal Procedure 32.1 and his Fifth Amendment due process rights by failing to afford him certain procedural protections prior to denying his motion. Second, he argues that the district court erred by failing to grant his motion because the condition banning his internet usage is overly broad and in violation of his First Amendment rights.

### A. *Procedural Protections*

"[W]e review de novo '[u]nderlying questions regarding compliance with the rules of criminal procedure and the provision of due process.'" *United States v. Winston*, 850 F.3d 377, 379–80 (8th Cir. 2017) (second alteration in original) (quoting *United States v. Davies*, 380 F.3d 329, 332 (8th Cir. 2004)).

---

Court order the destruction of . . . items . . . seized by the Probation Office during the course of supervising James B. Norris" on September 27, 2018. The district court indicated "agree[ment] with the recommendation of the Probation Officer" and signed off. *Id.* at 2.

### 1. *Federal Rule of Criminal Procedure 32.1*

Norris argues that he was denied certain procedural rights guaranteed to him under Federal Rule of Criminal Procedure 32.1. Specifically, he asserts that Rule 32.1 affords him the right to assistance of counsel and a hearing.

Rule 32.1(c)(1) provides that "[b]efore *modifying* the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c)(1) (emphasis added); *see also United States v. Sterling*, 959 F.3d 855, 860–61 (8th Cir. 2020) (stating that Rule 32.1(c)(1) provides that a "person has the right to counsel and an opportunity to make a statement and present any information in mitigation" at a "hearing" "[b]efore [the district court] *modif[ies]* the conditions of . . . supervised release" (emphasis added)).

By its plain language, Rule 32.1(c)(1) applies *only* if a district court "*modif[ies]* the conditions of . . . supervised release." Here, the district court *refused* to modify Norris's conditions of supervised release. Under Rule 32.1's plain language, neither a hearing nor counsel were required before the court denied Norris's motion. *See, e.g.*, *United States v. Bautista-Gunter*, 22 F.4th 506, 511 (5th Cir. 2022) (concluding that "Rule 32.1(c) 'does not compel the court to hold a hearing before refusing a request for modification'" (quoting *United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003)).

Accordingly, we hold that the district court did not violate Rule 32.1(c)(1) by failing to provide Norris with counsel and a hearing before it denied his motion to terminate supervision or modify the conditions of his supervised release.

### 2. *Due Process*

Norris also argues that the district court violated his Fifth Amendment due process rights by failing to (1) appoint counsel, (2) hold a hearing on the motion, (3)

notify him that it had requested a recommendation from the probation office, (4) notify him that the probation office's response revealed that it had contacted the government for its position on the motion, or (5) afford him an opportunity to review and challenge the Report.

Norris filed a motion to terminate supervision or modify the conditions of his supervised release. "Section 3583(e) provides that, after considering a number of defined factors, a district court may[, among other things,] terminate supervised release [or] extend supervised release or modify its conditions . . . ." *United States v. Stewart*, 7 F.3d 1350, 1351 (8th Cir. 1993) (citations omitted).

We have previously recognized that "[t]here is no constitutionally protected liberty interest in a discretionary sentence reduction, so the Due Process Clause does not afford procedural protections to those who seek one." *United States v. Beltran-Estrada*, 990 F.3d 1124, 1126 (8th Cir. 2021) (per curiam) (motion for sentence reduction under 18 U.S.C. § 3582(c)(2)) (quoting *United States v. Alaniz*, 961 F.3d 998, 999 (8th Cir. 2020) (per curiam) (motion for sentence reduction under 18 U.S.C. § 3582(c)(2))). But "we have [also] held that a district court abuses its discretion when there is no 'opportunity [for a movant] to respond to [*prejudicial*] information' because he or she lacks access 'to the material on which the court will base its sentencing decision.'" *Alaniz*, 961 F.3d at 999 (emphasis added) (second and third alterations in original) (quoting *United States v. Foster*, 575 F.3d 861, 863 (8th Cir. 2009)). Additionally, the Eleventh Circuit, relying on *Foster*, has "h[e]ld that each party must be given notice of and an opportunity to contest *new* information relied on by the district court." *United States v. Jules*, 595 F.3d 1239, 1245 (11th Cir. 2010) (motion for sentence reduction under § 3582(c)(2)).

Norris asserts that the Report's Supervision Summary included new information that he was never allowed to contest; specifically, it "included a new hearsay statement." Appellant's Reply Br. at 3. The statement represented that

"Norris' noncompliance included possessing internet capable devices without permission, accessing the internet without permission, viewing obscene material, and *his belief that he did not have to abide by the Court ordered special conditions*." R. Doc. 72, at 1 (emphasis added). Norris maintains that "[n]o one at [his revocation] hearing, or in any document prior thereto, ever suggested that [he] did not believe himself bound by the district court's special conditions of supervision." Reply Br. at 3. He contends that because this hearsay statement was attributed to him, it was prejudicial, and, therefore, he should have had the opportunity to challenge it. He further asserts that the Supervision Summary revealed that—unbeknownst to Norris—the probation office had contacted the government for its position on the motion.

We have reviewed the record. Document 61 is the "Supervised Release Revocation Sentencing Computation," which was docketed prior to Norris's revocation hearing. Norris has not argued that he was deprived of access to Document 61. That document provides, in relevant part:

> When interviewed on July 2, 2021, the offender admitted to the noncompliance noted above. Additionally, he stated that he has been accessing the internet on a daily basis through the various means listed directly above. When advising the offender that he has no permission to access the internet through any means and he must cease access immediately, *he became angry and stated that accessing the internet is a human right and is not something that the U.S. Probation Office can legally restrict. He further advised the undersigned that he does not know how the undersigned can do his job as I am "torturing people" and his "conscience" would not allow him to enforce these conditions of supervision.* The offender advised that he last accessed the internet on his smart television at his residence on July 2, 2021, and he would like to continue accessing the internet on his television because he enjoys checking his email and accessing his Twitter account.

-10-

R. Doc. 61, at 1–2 (emphasis added); *see also* R. Doc. 49, at 2 ("Petition for Warrant or Summons for Offender Under Supervision").

The Supervision Summary reveals that the authoring probation officer was referring to Norris's prior statements that appear in Document 61. The Supervision Summary summarizes the "seven violation reports . . . submitted to the Court." R. Doc. 72, at 1. It lists Norris's "noncompliance" in those violations reports as "includ[ing]" "his belief that he did not have to abide by the Court ordered special conditions." *Id.* While not artfully crafted, the Supervision Summary's statement—when read in context—references Document 61 and Norris's statement that "the U.S. Probation Office can[not] legally restrict" his access to the internet. R. Doc. 61, at 2. This information is not "new." *See Jules*, 595 F.3d at 1245.

Even assuming that the Supervision Summary's statement that Norris "belie[ved] that he did not have to abide by the Court ordered special conditions," R. Doc. 72, at 1, constitutes "new" information, *see Jules*, 595 F.3d at 1245, this information did not prejudice Norris. *See Alaniz*, 961 F.3d at 999. First, Norris was not eligible for *termination* of his supervised release at the time he filed the motion. Supervised release can only be terminated after the expiration of one year. 18 U.S.C. § 3583(e)(1). Second, Norris has shown no prejudice from the Supervision Summary's reference to Norris having indicated that he did not believe he had to follow his supervised-release conditions. This is especially true in light of the Supervision Summary's otherwise accurate representation of Norris's "seven violation reports," including his "possessing internet capable devices without permission, accessing the internet without permission, [and] viewing obscene material." R. Doc. 72, at 1.

Additionally, while the Supervision Summary stated the government's opposition to Norris's motion for an early termination of supervision or modification, this information, though "new" to Norris, *see Jules*, 595 F.3d at 1245, was not

-11-

prejudicial. *See Alaniz*, 961 F.3d at 999. The court was *already* aware of Norris's position because he was the one who *filed* the motion. Further, Norris filed his motion just four weeks after his revocation hearing. At that hearing, the court made clear its position on Norris's desire to modify the supervised-release conditions. Norris expressed frustration with "trying for so many years to stay compliant" and his desire to "get these conditions to be made more reasonable." R. Doc. 87, at 6. In response, the court advised Norris that his "remedy . . . was to abide by all the conditions to the T, to the letter, and then apply to have a reduction." *Id.* The court also noted that "[h]ad [Norris] had perfect compliance, [it] would have given [him] some relief already." *Id.* at 9. Despite Norris's violations, the court did "give [Norris] some relief" and imposed a term of "20 years" of supervised release "instead of a lifetime term of supervised release." *Id.* at 8.

Because Norris suffered no prejudice from the information contained in the Supervision Summary, no due-process violation occurred.

B. *Termination of Supervision and Modification of Conditions*

Norris also challenges the district court's substantive denial of his motion to terminate his supervision or to modify the conditions of his supervised release. According to Norris, the denial "allowed to stand the supervised release condition imposing a complete ban on [his] possession of devices capable of internet access." Appellant's Br. at 10. He argues that no court has upheld such a ban "without sufficient relation to the nature of the crime committed, because it is overbroad and impinges on the modern day necessity of internet access." *Id.* at 10–11.

"We review for abuse of discretion a district court's denial of a motion to modify the terms of supervised release, including a motion for early termination of supervised release." *United States v. Mosby*, 719 F.3d 925, 930 (8th Cir. 2013) (citations omitted). The district court has "broad discretion in this area" and "is in the

best position to evaluate the circumstances of each individual defendant." *Id.* (internal quotation marks omitted).

Section 3583(e) of 18 U.S.C. provides, in relevant part:

(e) Modification of conditions or revocation. The court *may*, *after considering [certain] . . . factors . . .*

> (1) *terminate a term of supervised release* and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice; [or]

> (2) . . . *modify*, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision . . . .

(Emphases added.)

By its plain language, § 3583(e) requires the district court to consider certain factors when it chooses to terminate a supervised-release term or modify the supervised-release conditions. But what must the district court do if it summarily *denies* a motion for termination of supervised release or modification of conditions? Is the district court required to offer reasons for denying the motion?

-13-

We addressed this scenario in *Mosby*. In that case, "the district court *summarily denied* [the defendant's] motion [for early termination of supervised release], rejecting his equitable arguments without comment." 719 F.3d at 930–31 (emphasis added). On appeal, the defendant asserted, among other things, "that at minimum [this court] should remand for the district court to explain its reasoning for *denying* his motion." *Id.* at 931. We held that "the district court did not abuse its discretion," explaining that the district court

> had presided over [the defendant's] trial and was well acquainted with his extensive criminal record, which includes convictions for violent offenses such as first degree attempted murder and first degree sexual assault. The district court was aware of the time that [the defendant] had been detained related to his [18 U.S.C.] § 4248 proceeding, his subsequent positive transition to life outside of custody, and his status as a sex offender subjecting him to state monitoring. *Neither 18 U.S.C. § 3583(e) nor relevant case law required the district court to explain its denial of early termination of supervised release*. We see no abuse of discretion in its summary denial of [the defendant's] motion.

*Id.* (emphasis added).[4]

_____

[4]The majority of other circuits have held to the contrary. *See, e.g.*, *United States v. Johnson*, 877 F.3d 993, 998 (11th Cir. 2017) ("We accordingly conclude that for a § 3583(e)(1) motion to be properly denied, the court's order, in light of the record, must indicate that the court considered the factors enumerated in the provision. We join a number of our sister circuits in so holding." (citation omitted)); *United States v. Mathis-Gardner*, 783 F.3d 1286, 1287 (D.C. Cir. 2015) (holding district court must consider specified statutory sentencing factors before denying motion for early termination of supervised release); *United States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014) ("A district court's duty to explain its sentencing decisions must also extend to requests for early termination of supervised release."); *United States v. Lowe*, 632 F.3d 996, 998 (7th Cir. 2011) ("[W]e have held that although a court need not make explicit findings as to each of the factors, the record must reveal that the court gave consideration to the § 3553(a) factors . . . ."); *United States v.*

*Mosby* controls the present case. As in *Mosby*, the district court has presided over Norris's case since its inception. It thoroughly explained at the revocation hearing why it was imposing a 20-year term of supervised release with the original, unobjected-to supervised-release conditions. Under *Mosby*, the court was not required "to explain its denial of early termination of supervised release." *Id.*

Furthermore, we find no abuse of discretion in the court's refusal to modify Norris's restrictions on internet and computer use.[5] No "*per se* rule [exists] that a district court may never impose a prior-approval Internet use restriction based on a defendant's receipt and possession of child pornography." *United States v. Morais*, 670 F.3d 889, 896 (8th Cir. 2012).

---

*Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003) (requiring a statement that the court has considered the statutory factors but not findings of fact); *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir.1999) ("[B]ecause the district court followed the statutory mandate to consider both Pregent's conduct and the interest of justice and concluded that Pregent's behavior did not warrant an early termination of supervised release, the district court did not abuse its discretion [in denying the defendant's motion under § 3583(e)]."). The Eighth Circuit is routinely cited as the outlier. *See, e.g.*, *Johnson*, 877 F.3d at 998 n.10. However, "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (quoting *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002)).

[5]The government argues that "because [Norris] did not challenge these conditions of supervised release when they were originally imposed, his request to modify them now constitutes an improper collateral attack on his underlying sentence." *United States v. Trimble*, 969 F.3d 853, 856 (8th Cir. 2020) (per curiam). "But this appeal does not arise from a supervised-release revocation proceeding, and [Norris] does not challenge the validity of his underlying supervised-release conditions. Instead, [he] has asked the district court to exercise its statutory authority to modify the terms of his supervised release." *Id.* (citing 18 U.S.C. § 3582(e)(2)). As we explained in *Trimble*, "[t]he district court had authority to rule on this request, and there is no barrier to our reviewing the district court's judgment on appeal." *Id.*

> Such a *per se* rule would be in tension with our cases holding that a district court should fashion conditions of supervised release on an individualized basis in light of the statutory factors and not by treating defendants as part of a class that is defined solely by the offense of conviction.

*Id.* (citations omitted). Indeed, we have "conclude[d] that [a] district court did not abuse its discretion by declining to modify or eliminate" a condition prohibiting the defendant from "access[ing] the internet or possess[ing] and/or us[ing] computers . . . , internet capable devices, cellular telephones, and other electronic communications or data storage devices or media without the prior approval of the U.S. Probation Officer" where the defendant had a "past [history of] us[ing] . . . electronic devices during both his offense conduct [of possessing child pornography] and while on supervised release." *Trimble*, 969 F.3d at 857 (internal quotation marks omitted); *cf. United States v. Koch*, 625 F.3d 470, 481–82 (8th Cir. 2010) (holding district court did not abuse its discretion in prohibiting defendant, who had been found guilty of possessing or receiving child pornography, from using or possessing computer or accessing Internet, without prior permission from probation officer, as condition of supervised release for conviction of child pornography possession, where defendant did more than merely possess child pornography, he was sophisticated computer user who already had violated less restrictive condition of release, and restriction was not complete ban); *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007) ("The special condition here, prohibiting Boston from accessing or possessing a computer without written approval of his probation officer, did not constitute an abuse of discretion because it was not absolute and because evidence was presented at the suppression hearing that Boston had used a computer to print out images of child pornography which could easily have been done for the purpose of transferring them to others.").

Like the defendant in *Trimble*, Norris has a "past [history of] us[ing] . . . electronic devices during both his offense conduct [of possessing child

-16-

pornography] and while on supervised release." *Trimble*, 969 F.3d at 857 (internal quotation marks omitted). In Norris's plea agreement to the original charge, he stipulated to knowingly possessing (1) "a graphic video file depicting a nude minor female engaged in the lascivious display of her genitalia"; (2) "[a] graphic video file depicting two nude minor females engaged in the lascivious display of their genitalia"; and (3) "more than 10 images, but less than 150 images of child pornography," "[s]ome of [which] . . . depicted prepubescent minors or minors under the age of twelve engaged in sexually explicit conduct." R. Doc. 28, at 9. He also agreed that certain specific offense characteristics applied, including (1) a two-level enhancement under U.S.S.G. § 2G2.2(b)(2) "because 'the material involved a prepubescent minor or a minor who had not attained the age of 12 years'"; (2) a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) "because 'the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material'"; and (3) a two-level enhancement under U.S.S.G. § 2G2.2(b)(7)(A) "because 'the offense involved at least 10 but fewer than 150 images.'" *Id.* at 6.

Consistent with his plea agreement, Norris did not object at his original sentencing to the "factual statements set out in the presentence report" or to application of the specific offense characteristics. R. Doc. 38, at 3. In announcing Norris's sentence, the district court imposed the ban on Norris's usage of computers to access the internet without prior approval of the probation office as a special condition of his supervised release.

Thereafter, Norris admittedly violated the ban on his usage of computers to access the internet without approval of the probation office. The district court then revoked his supervised release, sentenced him to three months' imprisonment and 20 years' supervised release, and reimposed the same conditions of supervised release. Furthermore, "[t]he condition is not an absolute prohibition, and it specifically contemplates that [Norris's] probation officer may allow access to these devices for

-17-

employment purposes." *Trimble*, 969 F.3d at 857 (citing *United States v. Notman*, 831 F.3d 1084, 1089 (8th Cir. 2016) (stating that "whether the restriction is a total ban" is a relevant factor in assessing restrictions like this one)).

"In light of [Norris's] conduct, and because he may seek approval [from the probation office], we conclude that the district court did not abuse its discretion by declining to modify or eliminate this condition." *Id.*

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, concurring.

I concur in the court's conclusion that, in light of our case law and the specific facts here, Norris raises no procedural error warranting reversal.

I also agree that, on the record before us, the district court did not abuse its discretion in denying Norris's pro se motion to modify the supervised release conditions that impose an outright ban on his use of a computer or the internet without the prior approval of the probation office. Norris did not address those conditions at his revocation hearing and then moved to modify them barely a week later, when he was still in custody serving his revocation sentence. Norris also offered no concrete details in his motion as to why the conditions would be unreasonably restrictive once he was released from custody, or why they are otherwise unrelated to the relevant sentencing factors in his case. See United States v. Romig, 933 F.3d 1004, 1006–07 (8th Cir. 2019).

Nevertheless, while there is indeed no "*per se* rule" barring a district court from imposing a prior-approval restriction on a defendant's computer and internet use, United States v. Morais, 670 F.3d 889, 896 (8th Cir. 2012), it is also true that we have

established what can only be described as a presumption against such restrictions where, like here, a defendant was "solely convicted of knowingly receiving and possessing child pornography." United States v. Wiedower, 634 F.3d 490, 495 (8th Cir. 2011); see United States v. Crume, 422 F.3d 728, 733 (8th Cir. 2005) ("We are not convinced that a broad ban from such an important medium of communication, commerce, and information-gathering is necessary given the absence of evidence demonstrating more serious abuses of computers or the Internet."). Computer- and internet-use restrictions, "like other special conditions of supervised release," cannot be categorically imposed on all sex offenders, but instead must be justified by "an individualized inquiry into a particular offender's circumstances." United States v. Sanchez, 44 F.4th 1100, 1105 (8th Cir. 2022) (discussing the well-established standards for reviewing supervised released conditions "imposed in sentencing sex offenders"). We have upheld such restrictions when that individualized inquiry showed that the defendant "sold, transferred, [or] produced" child pornography. United States v. Bender, 566 F.3d 748, 751 (8th Cir. 2009); see United States v. Boston, 494 F.3d 660, 668 (8th Cir. 2007) ("A restriction on computer usage does not constitute an abuse of discretion if the district court has found that the defendant used his computer to do more than merely possess child pornography . . . ."). And we have done the same when the particular facts of a defendant's possession offense proved to be especially "egregious." Morais, 670 F.3d at 896.

But here, there has never been a finding—not at Norris's sentencing, at his final revocation hearing, or in the order denying his motion to modify the conditions of his supervised release—explaining why Norris's individual circumstances warrant banning him from using computers or the internet without prior approval. See Wiedower, 634 F.3d at 495 (reversing a prior-approval computer restriction in part because the district court did not "conduct[] an individualized inquiry into the appropriateness of" such a restriction). Now that Norris has been released from custody, he might once again move to modify the restrictions at issue here. And after conducting an individualized inquiry into the specific facts of Norris's case and his

post-release circumstances, the district court may conclude that the restrictions, or some variation of them, are in fact necessary.

Yet our observation nearly two decades ago that the internet is an "important medium of communication, commerce, and information-gathering," Crume, 422 F.3d at 733, has by now become an understatement. Using the internet for such basic tasks as paying bills, finding directions, checking the weather, scheduling medical appointments, or searching and applying for a job is not just commonplace. It is, in many respects, the norm. Accordingly, prohibitions on the use of the internet and internet-capable devices that are more restrictive than necessary to protect the public and achieve the other goals of sentencing might very well end up being counter-productive, creating needless obstacles to defendants' ability to re-enter, and become productive and engaged members of, their communities. If the matter of Norris's internet use were properly before the district court, I am confident the court would conduct the appropriate analysis, keeping these and other relevant concerns in mind.

_____